**STATE of Tennessee**

v.

**Eric James OSBORNE.**

Court of Criminal Appeals of Tennessee, at Nashville.

March 20, 2007 Session.

Aug. 28, 2007.

Application for Permission to Appeal Denied by Supreme Court Jan. 28, 2008.

Ross E. Alderman, District Public Defender; Jeffrey A. Devasher, Assistant Public Defender; C. Dawn Deaner, Assistant Public Defender; and Amy Dawn Harwell, Assistant Public Defender, Nashville, Tennessee, for the appellant, Eric James Osborne.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor Johnson III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and J.C. McLIN, J. joined.

Following a jury trial, Defendant, Eric James Osborne, was found guilty of seven counts of rape of a child, a Class A felony, and five counts of aggravated sexual battery, a Class B felony. The trial court declared a mistrial on two counts of rape of a child and one count of aggravated sexual battery because the jury was unable to reach a verdict on these charges. The trial court conducted a sentencing hearing after which it sentenced Defendant to twenty-five years for each rape of a child conviction and eleven years for each aggravated sexual battery conviction. The trial court ordered Defendant to serve a combination of consecutive and concurrent sentences for an effective sentence of one hundred and seventy-two years. On appeal, Defendant argues that (1) the trial court erred in denying Defendant's motion to sever the offenses involving different victims; (2) the trial court erred in denying Defendant's motion for mistrial; (3) the evidence is insufficient to support Defendant's convictions in counts 14 and 15 of the superceding indictment; (4) the trial court erred in allowing testimony concerning prior bad acts; (5) the trial court erred in ruling that Defendant's prior conviction of child abuse would be admissible for impeachment purposes; and (6) that the trial court erred in determining the length and manner of service of Defendant's sentences. After a thorough review, we affirm the judgments of the trial court.

## I. Background

The minor victims, T.D. and J.O., will be referred to by their initials. T.D., who was nine years old at the time of the trial, testified that at the time of the incidents, she lived in the same apartment complex as Defendant and Defendant's daughter, J.O. T.D. and J.O. became friends. Defendant babysat T.D. while T.D.'s mother worked, and T.D. often spent the night at Defendant's apartment. T.D. testified that the offenses concerning her occurred around her sixth birthday, which was on December 16, 2001.

T.D. stated that Defendant made her and J.O. watch a videotape with women who "weren't all the way dressed." Defendant wanted T.D. and J.O. to engage in the type of activity portrayed by the women on the video tape. T.D. said that Defendant picked her up and placed her on top of J.O. Defendant grabbed T.D.'s hips and moved her up and down on J.O.'s stomach and private parts. This incident occurred in the living room of Defendant's apartment. T.D. said that this type of conduct occurred more than one time, both in the living room and in Defendant's bedroom.

T.D. described an act of fellatio which occurred in Defendant's bedroom. T.D. said she was lying on the bed on her back. Defendant pulled his pants down and leaned over her "in a push-up position." Defendant placed his penis in T.D.'s mouth while J.O. watched. Defendant told T.D. not to tell anybody. T.D. said that Defendant did the same thing to J.O. This type of conduct also occurred in the living room in J.O.'s presence. T.D. said that a milk-like substance came out of Defendant's penis when he engaged in this activity.

T.D. described an incident which occurred in Defendant's bedroom. Defendant took off T.D.'s clothes and rubbed her chest, stomach, and private parts. T.D. said Defendant's touchings were "rough." T.D. said that J.O. observed the incident from the other side of the bed and that J.O. was also naked.

T.D. said that Defendant, who was naked, performed oral sex on her in his bedroom. J.O. was on the other side of the bed during this activity. T.D. said that this type of activity occurred more than one time, and Defendant would also perform oral sex on J.O. while T.D. watched.

T.D. described an incident during which Defendant made T.D. and J.O. get on top of him as he lay on the bed. Defendant held T.D.'s hips and moved her so that his penis rubbed against T.D.'s private part. The same act was performed with J.O. T.D. said that her clothes were on during the incident.

T.D. said that Defendant made her touch his penis in the bedroom and the living room in J.O.'s presence. One incident involved Defendant leaning over T.D. as she lay on her back on the bed. Defendant made T.D. move her hand up and down on Defendant's penis, and T.D. said "that milky stuff" came out. This type of activity occurred more than one time.

T.D. testified that Defendant made T.D. and J.O. touch each other's private parts while Defendant watched. T.D. said that she had a shirt on during this incident, but her pants were pulled down.

T.D. said that J.O.'s two brothers were asleep in the apartment when many of the incidents occurred. T.D. said that she sometimes slept in a closet so Defendant would not find her. T.D. first told her older brother about the incidents, then a neighbor, Dede Flitcroft. Ms. Flitcroft told T.D. to tell her mother about Defendant's conduct. T.D.'s mother, Melissa Dodd, called the police. T.D. said that she and her mother moved to a trailer park after the police became involved.

J.O. was fourteen years old at the time of the trial. J.O. said that her mother died in 1996. J.O. and her two brothers, Chad and C.J., lived with her father, while an older brother, Curtis, lived with Sherry Foy, a friend of J.O.'s mother. J.O. said that she and T.D. had been friends a year or two before T.D. reported the abuse.

J.O. said that she woke up one night and found Defendant in her bed on top of T.D. J.O. testified that Defendant performed oral sex on T.D. while she sat on the couch. This activity occurred more than one time in the living room. J.O. said that Defendant performed oral sex on her in the living room in front of T.D.

J.O. said that she was present when Defendant put his penis in T.D.'s mouth. J.O. said that she was required to do the same in front of T.D. J.O. said that Defendant told her that she did it just like her mother, and that her mother would be proud of J.O. J.O. said that Defendant made her and T.D. perform oral sex on each other while he watched. J.O. was present when Defendant made T.D. masturbate him, and Defendant rubbed his penis against J.O.'s and T.D.'s private parts in the living room. J.O. said that she was supposed to watch out for her brothers while Defendant engaged in sexual activity with T.D.

On cross-examination, J.O. acknowledged that she at first denied that Defendant had engaged in sexual activity with her. J.O. said that she first told the counselors at the Child Advocacy Center that her brothers, Curtis and Chad, had engaged in sexual activity with her, and that C.J. had inappropriately touched T.D. J.O. said that she told Ms. Foy about Defendant's inappropriate conduct about a month after T.D. reported the abuse. J.O. said that her paternal grandfather sexually abused her when she was eight years old. J.O. acknowledged that she had engaged in sexual activities with other children, including her cousin and T.D.'s brother.

On redirect examination, J.O. said that she did not want to tell anyone about Defendant's conduct because she was afraid of her father, who was often violent with J.O. and her brothers. J.O. said she decided to talk to Ms. Foy after Defendant moved to his parents' home in Ohio, and J.O. felt safe. J.O. said Defendant was the first person to engage in sexual activities

with her, beginning when she was between seven and eight years old. J.O. said she was sexually active with other children because Defendant told her that is what she should do if she cared about the other person.

Autumn Moultry, a case manager with the Department of Children's Services, testified that a former DCS employee, Angela Sutton–Jones, interviewed T.D. on April 19, 2002, and May 7, 2002. Ms. Moultry interviewed J.O. at her school after T.D.'s interview, during which J.O. denied that Defendant had inappropriately touched her. Detectives Shane Finchum and David Zoccola with the Metro Nashville Police Department accompanied Ms. Moultry to Defendant's apartment. Ms. Moultry said that Defendant agreed to a safety plan for J.O. and her brothers which involved placing the children in the care of Ms. Foy.

Detective Zoccola testified that Defendant was arrested in Ohio. On cross-examination, Detective Zoccola acknowledged that Defendant was cooperative during the initial interview and executed a written consent for the investigating officers to search his apartment and take photographs. Detective Zoccola acknowledged that his information indicated that Ms. Moultry had a contact telephone number for Defendant while he was in Ohio.

Hollye Gallion and Sue Ross, pediatric nurse practitioners with Our Kids Center, performed medical examinations on J.O. and T.D., respectively. Both testified that the genital examinations did not reveal any abnormalities, which was consistent with the type of abuse reported.

## II. Motion to Sever

### A. Procedural Background

Defendant was indicted on a multiple count indictment charging various types of sexual offenses against four victims, including J.O. and T.D., which occurred between January 1, 1996, and May 21, 2002. A superseding indictment was issued on May 8, 2003. Prior to trial, Defendant filed a motion to sever each count of the indictment or, in the alternative, to sever the counts which involved different victims. The first hearing on Defendant's motion was conducted on May 3, 2004. The State called Detective Zoccola as a witness, and introduced the four victims' forensic interviews as an exhibit. The matter was continued until July 22, 2004, at which time Keven Walker, a case manager with the Department of Children's Services, testified. Mr. Walker stated that during an interview, J.O. disclosed various sexual offenses committed by Defendant against her which were witnessed by T.D.; offenses committed by Defendant against T.D. which were witnessed by J.O.; offenses committed by Defendant against both J.O. and T.D.; and offenses committed by Defendant against J.O. when T.D. was not present.

Based on the evidence presented by the State at that point, the trial court granted Defendant's motion in part, allowing the State to proceed jointly only on those charges in which one victim was a witness to an alleged offense committed against another victim, or which involved an alleged offense committed against more than one victim. The trial court found that the State had failed to sufficiently establish the existence of a common scheme or plan as to those charges involving alleged offenses committed against one victim which did not involve a second victim.

The State initially elected to proceed to trial first on the counts of the indictment pertaining to victim, J.O., and filed a notice of intent to use evidence of Defendant's prior bad conduct (as to victim, T.D.) pursuant to Rule 404(b) of the Tennessee Rules of Evidence. Defendant filed a mo-

tion to introduce evidence pursuant to Rule 412 of the Tennessee Rules of Evidence to explain J.O.'s knowledge of sexual matters.

The trial court conducted a hearing as to both motions on February 22, 2005. Both J.O. and T.D. testified in detail at the hearing about Defendant's inappropriate conduct, which included descriptions of offenses committed against J.O. and T.D. jointly; offenses committed against J.O. which were witnessed by T.D.; and offenses committed against T.D. which were witnessed by J.O. T.D. testified that Defendant did not engage in any inappropriate conduct with her outside of the presence of J.O. The other two victims of the alleged offenses did not testify at the hearing. The State orally requested the trial court to revisit its motion to sever the charges pertaining to T.D. from those pertaining to J.O. as a result of the victims' testimony. The State also filed an amended bill of particulars based on J.O.'s and T.D.'s testimony presented at the hearing.

As a result of the State's evidence presented at the February 22, 2005, hearing and the amended bill of particulars, the trial court revised its severance order permitting the offenses involving J.O. and T.D. in counts 1 through 12, 15 through 16, and 18, in which it was alleged that J.O. and T.D. were either joint victims or a witness to the offense committed against the other, to be tried jointly. All other counts were severed for separate trials.

### B. General Principles

The State consolidated the offenses against Defendant in a superseding indictment pursuant to Rule 8(b) of the Tennessee Rules of Criminal Procedure, which provides that two or more offenses may be consolidated "if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character."

*See* Tenn. R.Crim. P. 8(b). Tennessee Rule of Criminal Procedure 14(b)(1) provides that "[i]f two or more offenses have been joined or consolidated for trial pursuant to Rule 8(b), the defendant shall have a right to a severance of the offenses unless the offenses are part of a common scheme or plan, and the evidence of one would be admissible upon the trial of the others."

A trial court's decision "to consolidate or sever offenses pursuant to Rules 8(b) and 14(b)(1) are to be reviewed for an abuse of discretion." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn.1999). "A holding of abuse of discretion reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." *State v. Moore,* 6 S.W.3d 235, 242 (Tenn.1999). Our supreme court has explained that "when a defendant objects to a pre-trial consolidation motion by the state, the trial court must consider the motion by the severance provisions of Rule 14(b)(1), not the 'same or similar character' standard of Rule 8(b)." *Spicer v. State* 12 S.W.3d 438, 443 (Tenn.2000). In reviewing the propriety of the consolidation of offenses prior to trial, the reviewing court should look to the evidence presented at the severance hearing. *Id.* at 447.

Common scheme or plan evidence tends to fall into one of three categories: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. *Moore,* 6 S.W.3d at 240. "The larger, continuing plan category encompasses groups or sequences of crimes committed in order to achieve a common ultimate goal or purpose." *State v. Hallock,* 875 S.W.2d 285, 290 (Tenn.Crim.App.1993) (citing N. Co-

hen, *Tennessee Law of Evidence*, § 404.11 (2nd ed.1990)). "The same transaction category involves crimes which occur within a single criminal episode." *Id.*

In examining a trial court's determination on a severance issue, the second prong of Rule 14(b)(1) requires a showing that the evidence of one offense would be admissible in the trial of the other if the offenses remained severed. *Spicer*, 12 S.W.3d at 445. To comply with the requirements in the second prong, the trial court must conclude that (1) the evidence of each offense is relevant to some material issue in the trial of the other offense under Tennessee Rule of Evidence 404(b)(2); and (2) the probative value of the evidence of the other offense is not outweighed by the prejudicial consequences of admission under Tennessee Rule of Evidence 404(b)(4). *State v. Hoyt*, 928 S.W.2d 935, 944 (Tenn.Crim.App.1995), *overruled on other grounds by Spicer*, 12 S.W.3d at 447 n. 12. In Tennessee, evidence of other offenses may be admissible to show (1) motive; (2) intent; (3) guilty knowledge; (4) identity of the defendant; (5) absence of mistake or accident; or (6) a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the other. *Id.*

### C. Same Transaction

Based on the evidence before it, the trial court allowed the State to proceed jointly as to those counts of the indictment involving alleged offenses committed against J.O. and T.D. at the same time: count 1, alleging that Defendant performed a sexual act on one victim while instructing that victim to simultaneously perform a sexual act on the second victim; counts 5 and 6, alleging offenses wherein Defendant would alternate performing sexual acts on T.D. and J.O. during the same

episode; and counts 4, 7, 15, and 18 alleging offenses wherein Defendant made J.O. and T.D. perform sexual acts on each other while Defendant watched. These counts, alleging offenses occurring either simultaneously or closely related in time and circumstances, are clearly part of the same criminal transaction, and the evidence of one offense would be admissible at the separate trials of the others. *See State v. Morris*, 788 S.W.2d 820, 823 (Tenn.Crim.App.1990). Accordingly, the trial court did not err in denying Defendant's motion to sever as to these counts.

### D. Common Scheme or Plan

Counts 2 and 3, and counts 8 through 12, of the superseding indictment, as reflected in the State's amended bill of particulars, alleged offenses of varying sexual nature committed by Defendant on one victim in the other victim's presence. The State sought consolidation under the theory that the crimes committed against these two victims were part of a common scheme or plan.

Relying on *State v. Denton*, 149 S.W.3d 1 (Tenn.2004), Defendant argues that "[t]he argument that sex crimes can be construed as part of a continuing plan or conspiracy merely by the fact that they are committed for sexual gratification has previously been rejected." *Id.* at 15 (citing *Moore*, 6 S.W.3d at 240) (stating that two offenses of child rape do not create a larger conspiracy); *Hallock*, 875 S.W.2d at 290 (holding that the mere fact that crimes were committed for sexual gratification is insufficient to constitute a continuing plan or conspiracy).

In *Denton*, the defendant was charged with committing twenty sexual offenses in his office against eleven separate patients/victims over a period of six years. *Denton*, 149 S.W.3d at 3. The State submitted that the commission of the offenses

was a continuing plan, the ultimate goal of which was the defendant's sexual gratification. Based on the facts before it, our supreme court concluded that the State had failed to offer any evidence that the crimes were committed in furtherance of a plan that had "a readily distinguishable goal," instead of "simply a string of similar offenses." *Id.* at 15.

The case *sub judice* is distinguishable from the situation presented in *Denton* where the only common thread connecting the victims of the various offenses was their status as the defendant's patients. In the instant case, the State presented evidence that Defendant used J.O.'s friendship with T.D., and his own status as T.D.'s babysitter, to commit the charged offenses. When T.D.'s mother was away from home at night, Defendant volunteered to babysit T.D. until the next morning. The alleged offenses occurred during these "sleep overs" while Defendant was charged with the care of T.D. T.D. testified at the hearing on February 22, 2005, that she did not remember any offenses committed against her in Defendant's apartment when J.O. was not present. Based on our review of the record, we conclude that the trial court did not err in finding that Defendant's conduct constituted a continuing plan or scheme to commit sexual offenses against T.D. and J.O. *See Morris,* 788 S.W.2d at 823 (concluding that the defendant's status in the community, his use of his status as a father figure to the minor victims, his employment of the same methods of enticing the victims to his home, and his engaging in the same type of sexual conduct with the victims was sufficient to support a finding the "defendant's various offenses were parts of a common scheme and plan on his part to sexually molest these young victims").

Defendant denied that he committed the alleged offenses. Defendant's theory of defense was that the T.D. was encouraged to make the initial allegations against Defendant by Dede Flitcroft, who was mad at Defendant. Defendant introduced evidence at trial of the victims' sexual activities with other persons to show that the victims' knowledge of sexual matters was obtained from persons other than him. *See* Tenn. R. Evid. 412(c)(4)(ii). J.O. and T.D. were direct witnesses to the offenses committed by Defendant against the other, and the offenses committed against each victim were substantially similar to the offenses committed against the other victim. Each of the victims' testimony as to the crimes against the other was relevant to rebut the theory that someone other than Defendant had committed the alleged offenses, and based on our review of the record, the probative value of the evidence was not outweighed by the danger of unfair prejudice. *See* Tenn. R. Evid. 404(b). Accordingly, we conclude that the trial court did not err in permitting the State to proceed to trial jointly on these charges. Defendant is not entitled to relief on this issue.

## III. Renewed Motion for Severance During Trial and Motion for Mistrial

Defendant argues that even if the denial of his motion for severance was initially proper on the basis that J.O. and T.D. were either joint victims or witnesses to the other's abuse, the trial court erred in not granting his motion during trial for a severance of count 7 (involving T.D.) and counts 9 through 15 (involving J.O.) based on the evidence presented at trial. As to these counts, Defendant submits that the second victim either did not remember the incident or did not testify about the incident on direct examination. Defendant contends that as a result the jury was permitted to hear the type of propensity evidence

sought to be prevented by Rule 14(b) of the Tennessee Rules of Criminal Procedure and was contrary to the basis upon which the trial court permitted these counts to be consolidated for trial. Alternatively, Defendant argues that the trial court erred in not granting his motion for mistrial based on a variance between the amended bill of particulars and the State's election of offenses which Defendant contends was both fatal and prejudicial.

 A trial court may grant a severance of offenses during trial with the consent of the defendant if "it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense." Tenn. R.Crim. P. 14(b)(2)(ii). In making its determination, the trial court is required to "consider whether, in light of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." *Id.* As noted above, the decision as to whether or not to grant a severance is left to the sound discretion of the trial judge, and this decision will not be disturbed unless the defendant is unfairly or unduly prejudiced. *See State v. Coleman,* 619 S.W.2d 112, 116 (Tenn.1981); *State v. Woods,* 806 S.W.2d 205, 211 (Tenn.Crim. App.1990). Stated in another manner, a trial court will not be found to have abused its discretion in denying a severance unless " 'the defendant was clearly prejudiced to the point that the trial court's discretion ended and the granting of [a] severance became a judicial duty.' " *State v. Burton,* 751 S.W.2d 440, 447 (Tenn.Crim.App.1988) (quoting *Hunter v. State,* 222 Tenn. 672, 440 S.W.2d 1, 6 (Tenn.1969)).

Defendant's challenge concerns the corroborating testimony of one victim which was in some way inconsistent with the other victim's testimony, or which did not address the incident testified to by the other victim on direct examination. According to the State's election of offenses, counts 1 through 8 involved offenses committed against T.D., and counts 9 through 15 involved offenses committed against J.O. J.O., the older of the two victims, testified in greater detail about the charged offenses than did T.D., and J.O. had a more thorough present recollection at the time of trial than T.D. However, each victim on direct examination described the incidents of sexual abuse for each count in which they were the named victim. T.D. clearly testified that J.O. was always present when T.D. was the recipient of Defendant's inappropriate conduct.

In support of his argument, Defendant points out that T.D. testified that the offenses against J.O. reflected in counts 9 and 11 occurred in Defendant's bedroom while J.O. testified that the offenses were committed against her in the living room. T.D., in support of counts 7 and 14, testified that Defendant made her rub J.O.'s genitals with her hand, an activity which was not addressed by J.O. during her direct examination. J.O. testified that Defendant made her and T.D. perform oral sex on each other as reflected in count 10, but T.D. did not have a present recollection at trial of this type of sexual conduct. T.D. did not address the incidents supporting the alleged offenses against J.O. in counts 11, 12, 13, or 15 during her direct examination.

The evidence presented on each count by the respective victim was clear and straightforward. Both victims clearly testified about sexual offenses which were committed against them jointly or in the presence of the other. The fact that one of the victims was not questioned about or did not recollect specific instances of sexual abuse testified to by the other victim goes to the credibility of the victim's testi-

mony. The jury was unable to reach a verdict on counts 2, 4 and 8, of the indictment, indicating that the jury was not predisposed to convict Defendant at all costs, and demonstrating an ability to distinguish the evidence and apply the law as to each offense. Based on our review of the record and the arguments of counsel in their respective briefs, we conclude that Defendant has failed to show that he was unduly or unfairly prejudiced by the trial court's denial of his renewed motion for a severance.

Alternatively, Defendant argues that the trial court erred in not granting his motion for a mistrial based on a variance between the trial testimony and the State's amended bill of particulars. We initially observe that the determination of whether to grant a mistrial rests within the sound discretion of the trial court. *State v. Smith*, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. *State v. Reid*, 91 S.W.3d 247, 279 (Tenn.2002); *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn.Crim.App.1991). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Williams*, 929 S.W.2d 385, 388 (Tenn.Crim. App.1996). A trial court should grant a mistrial only when it is of "manifest necessity." *Id.*; *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn.Crim.App.1977). "In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did." *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim.App.2000) (citing *State v. McPherson*, 882 S.W.2d 365, 370 (Tenn.Crim.App. 1994)). The burden of establishing the necessity for mistrial lies with the party seeking it. *Williams*, 929 S.W.2d at 388. No abstract formula should be mechanical-

ly applied in making this determination, and all circumstances should be taken into account. *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn.1993).

"A variance between an indictment or a subsequent bill of particulars and the evidence presented at trial is not fatal unless it is both material and prejudicial." *State v. Shropshire*, 45 S.W.3d 64, 71 (Tenn.Crim.App.2000) (citing *State v. Moss*, 662 S.W.2d 590, 592 (Tenn.1984)). A variance is not material when substantial correspondence exists between the proof and the indictment. *Shropshire*, 45 S.W.3d at 71. When the indictment and the proof substantially correspond, the Defendant is not misled or surprised at trial, and there is protection against a second prosecution for the same offense, the variance is not considered material. *Moss*, 662 S.W.2d at 592. It is not reversible error when a defendant is sufficiently aware of the charge and is able to adequately prepare for trial. *Id.*

Based on our review, although the numbers assigned to the offenses listed as separate counts in the amended bill of particulars and the State's election of offenses are sometimes different, the charged offenses as reflected in the two documents substantially correspond. The trial court denied Defendant's motion, finding that Defendant was fully aware of the charges against him based on the lengthy testimony of J.O. and T.D. at the motion hearing conducted on February 22, 2005, and the amount of detail presented in the amended bill of particulars. Moreover, the proof presented at trial substantially corresponded with the information provided in the amended bill of particulars. "A material variance occurs only if the prosecutor has attempted to rely upon theories and evidence at the trial that were not fairly embraced in the allegations made in the charging instrument." *Shrop-*

*shire,* 45 S.W.3d at 71 (citations omitted). Defendant has failed to show that he was misled or surprised at trial by any variance between the amended bill of particulars and the election of offenses, or that a manifest necessity was present which would compel a mistrial. We conclude that the trial court did not abuse its discretion in denying Defendant's motion for mistrial. Defendant is not entitled to relief on this issue.

## IV. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his convictions in counts 14 and 15 of the indictment. Defendant does not challenge the sufficiency of the evidence supporting his other convictions. In reviewing Defendant's challenge to the sufficiency of the evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black,* 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn.1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland,* 958 S.W.2d

651, 659 (Tenn.1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn.Crim. App.1990).

■ Defendant was convicted of the offense of aggravated sexual battery against J.O. in counts 14 and 15 of the indictment. Aggravated sexual battery is defined as the "unlawful sexual contact with a victim by the defendant or the defendant by a victim . . . when the victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4). " 'Sexual contact' includes the intentional touching of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). "Intimate parts" includes the victim's primary genital area. *Id.* § 39-13-501(2). A person is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." *Id.* § 39-11-402(2). Criminal responsibility is not a separate crime but instead a theory by which the state may prove the defendant's guilt based upon another person's conduct. *State v. Mickens,* 123 S.W.3d 355, 389-90 (Tenn.Crim.App.2003).

Count 14 alleged that Defendant:

had [T.D.] fondle the genitals of [J.O.] in the living room of the defendant's apartment in Hermitage. The defendant watched this activity take place and told [J.O.] and [T.D.] to touch each other this way.

■ Defendant argues that the evidence was insufficient to support his con-

viction for this count of the indictment because J.O. did not have a present recollection at trial of this type of sexual contact with T.D. Instead, J.O. described an incident with T.D. under Defendant's direction which involved oral sex, and she acknowledged that she did not remember other types of touchings between the two victims. T.D. clearly testified at trial, however, that Defendant made her touch J.O.'s genital area with her hand and made J.O. touch her the same way. T.D. said that Defendant "was right besides [sic] us, watching us [do] it." Based on our review, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Defendant was guilty of the offense of aggravated sexual battery for this incident.

▮ Count 15 alleged that "the defendant rubbed his penis over the genitals of [J.O.] while she was on the couch in the living room of the defendant's apartment in Hermitage." At trial, J.O. testified that Defendant "rubb[ed] his private on mine" in the living room. Defendant argues that J.O.'s testimony was inconsistent with the State's election because J.O. did not testify at trial that the incident occurred on the couch and implied during her testimony that the incident occurred on the living room floor. J.O., however, testified as to only one incident involving Defendant rubbing her genital area with his penis, and the location of this incident occurred in the living room. Based on the foregoing, we conclude that the evidence was sufficient beyond a reasonable doubt to support Defendant's conviction of aggravated sexual battery in count 15 of the indictment. Defendant is not entitled to relief on this issue.

## V. Evidence of Other Uncharged Offenses

Defendant argues that the trial court erred in allowing the State to introduce evidence of other sexual offenses committed by Defendant against J.O. which occurred prior to the time when J.O. met T.D. Defendant points out that the trial court had previously ordered that only those counts involving both J.O. and T.D., either as a witness or a joint victim, could be tried jointly, and the evidence of other uncharged crimes occurring before that period violated the narrow exception set forth in *State v. Rickman,* 876 S.W.2d 824 (Tenn.1994). Defendant submits that the trial court's evidentiary ruling allowed the jury to hear the type of propensity evidence which the trial court's severance order was intended to prevent. Defendant denies that he opened the door to the State's line of questioning during J.O.'s cross-examination about uncharged offenses committed before J.O. met T.D.

Prior to trial, Defendant filed a motion pursuant to Rule 412 of the Tennessee Rules of Evidence seeking to introduce evidence that J.O. had engaged in sexual activities with persons other than Defendant to show the basis for J.O.'s knowledge of sexual matters. *See* Tenn. R. Evid. 412(c)(4)(ii). During a pre-trial hearing on Defendant's motion, the trial court ruled from the bench that such testimony would be admissible as evidence of J.O.'s prior sexual knowledge. J.O. testified at the motion hearing that she had engaged in sexual activities with other persons including her grandfather, her cousin, her brothers, T.D.'s brother, and four neighborhood children. The trial court found that Defendant had established a sufficient basis for the admission of the evidence and granted Defendant's motion.

At trial, defense counsel questioned J.O. at length during cross-examination about her prior sexual activities with numerous other persons. At one point, the following colloquy occurred:

[DEFENSE COUNSEL]: I'd like to talk a little bit now about some of the things that happened with your grandfather as well as maybe some other people. Uh—your grandfather lived in Ohio, is that right?

[J.O.]: Yes, ma'am.

[DEFENSE COUNSEL]: He never lived in Nashville, is that right?

[J.O.]: No, ma'am.

[DEFENSE COUNSEL]: Okay. There was a time when you were around eight years old when your grandfather touched you in—in some bad ways, is that ... right?

[J.O.]: Yes, ma'am.

J.O. acknowledged that her grandfather had performed oral sex on her and made her fellate and touch him. Defense counsel then asked J.O. about her sexual activities with her brothers, her cousin, T.D.'s brother, and three female friends. J.O. acknowledged the type of sexual activity she engaged in with each individual and acknowledged that each incident occurred before she went to live with Ms. Foy, and thus before she made the allegations against Defendant. At the conclusion of J.O.'s testimony on this topic, the trial court issued a limiting instruction to the jury that the evidence concerning J.O.'s sexual activities with persons other than Defendant should not be considered for any purpose other than J.O.'s knowledge of sexual matters.

During a recess in the middle of J.O.'s cross-examination, the trial court conducted a hearing pursuant to Rule 404(b) of the Tennessee Rules of Evidence. In response to J.O.'s cross-examination, the State sought to introduce evidence that Defendant was the original source of J.O.'s sexual knowledge.

At the motion hearing conducted out of the presence of the jury, J.O. stated during the State's offer of proof that Defendant had first approached her sexually a year or two after her mother died, and confirmed that Defendant was the first person to touch her in a sexual manner. The trial court found that J.O.'s proposed testimony concerning when Defendant initiated sexual contact with her was relevant to rebut the assertion created on cross-examination that J.O. had gained her sexual knowledge from people other than Defendant, and that the probative value of the evidence was not outweighed by its prejudicial effect.

The trial court also found, separate from the Rule 404(b) issue, that Defendant had opened the door to this line of questioning by leaving the clear implication during her cross-examination that J.O. gained her sexual knowledge from her grandfather. The trial court stated:

> So, the clear implication is, that the reason she tells all these things about her father is because of the activity with her grandfather. . . . That's the problem that you get into when you raised all this up. But, just in that questioning about the grandfather, you pointed out, the clear implication you left with your question, [defense counsel], was that she-that the activity with the grandfather is where she got the information that she then later told, because she had not told about her father before. There is no other way but that's the implication that was left with the jury.

On redirect examination, J.O. testified that Defendant was the first person to engage her in oral sex, masturbation, and penile to genital contact, and that these activities occurred when she was seven or

eight years old, and before she met T.D. J.O. testified that she learned from Defendant about the types of sexual activities she engaged in with other people. The trial court gave the jury a limiting instruction at the conclusion of J.O.'s redirect examination as follows:

Ladies and gentlemen, if from the testimony you find that the defendant may have engaged in other criminal activity other than that for which he's on trial, you may not consider such evidence to prove his disposition to commit such a crime as that on trial. You may only consider it for the limited purpose of determining whether it provides an explanation of why ... [J.O.] had knowledge of sexual matters or an explanation as to why she did not disclose the allegations when first interviewed. You may not consider it for any other purposes than that just stated.

Rule 404(b) of provides that:

Other Crimes, Wrongs, or Acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is out-

weighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

█ As a general proposition, evidence of a defendant's prior crimes, wrongs, or acts is not admissible to prove that he committed the crime in question. Tenn. R. Evid. 404(b). The rationale underlying the general rule is that admission of such evidence carries with it the inherent risk of the jury convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than the conviction resting upon the strength of the evidence. *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn.1994). The risk is greater when the defendant's prior bad acts are similar to the crime for which the defendant is on trial. *Id.*; *see also State v. McCary*, 922 S.W.2d 511, 514 (Tenn.1996).

█ In *Rickman*, the Tennessee Supreme Court held that there is no general "sex crime" exception to the general rule against admitting evidence of other crimes. *See State v. Burchfield*, 664 S.W.2d 284, 287 (Tenn.1984). However, the *Rickman* court recognized that, as a limited exception, the State should be allowed some latitude in the prosecution of criminal acts committed against young children who are frequently unable to identify a specific date on which a particular offense was committed. *Rickman*, 876 S.W.2d at 828. "[T]he introduction of other sexual crimes *outside* the indicted period or in a 'date specific' indictment requires compliance with Rule 404(b) procedures." *State v. Hoyt*, 928 S.W.2d 935, 947 (Tenn.Crim.App.1995), *overruled on other grounds by Spicer*, 12 S.W.3d at 447 (emphasis in original).

In the case *sub judice*, the trial court consolidated for trial only those counts of the indictment which involved both victims in some manner and which occurred be-

tween December 16, 2000, and April 11, 2002. Those offenses involving J.O. individually as a victim and which occurred after August 8, 1998, and before December 16, 2000, were severed and set for a separate trial. Thus, evidence of uncharged sexual offenses prior to December 16, 2000, falls outside the indictment period and must be admissible on some ground other than *Rickman*.

Rule 404(b) does not bar evidence of uncharged offenses when offered at trial to prove another relevant issue such as to show the defendant's motive, intent, or identity, or to show the absence of mistake or accident if that is a defense, or "a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the other." *Collard v. State*, 526 S.W.2d 112, 114 (Tenn.1975). When the trial court substantially complies with the requirements of Rule 404(b), as the trial court did in the case *sub judice*, we review the trial court's determination for an abuse of discretion. *State v. McCary*, 119 S.W.3d 226, 244 (Tenn.Crim.App.2003).

Here, the trial court found that the evidence concerning the earlier sexual offenses committed against J.O. was relevant to establish Defendant's identity as the perpetrator to the later offenses. Defendant denied that he committed the offenses against J.O. and T.D. It was Defendant's theory of defense that J.O. learned about the types of sexual activities she later accused him of committing from her grandfather, not Defendant, and only made her allegations after first repeatedly denying that Defendant had touched her inappropriately. Even if the trial court erred, however, in admitting this evidence pursuant to Rule 404(b), we find no error in the trial court's determination that the State's proffered evidence was admissible under the "doctrine of curative admissibility."

In *State v. Land*, 34 S.W.3d 516, 531 (Tenn.Crim.App.2000), we expressly acknowledged this Court's prior implicit adoption of the "doctrine of curative admissibility," which most often arises when the "door" to a particular subject is opened by defense counsel on cross-examination. *Id.* "[T]he doctrine of curative admissibility permits the State, on redirect, to question the witness to clarify or explain the matters brought out during or to remove or correct unfavorable inferences left by, the previous cross-examination," even if the evidence is otherwise inadmissible. *Id.* (citations omitted).

Based on our review of the record, we conclude that the trial court did not abuse its discretion in permitting the State on redirect examination to clarify that J.O.'s knowledge of sexual matters originally came from Defendant. At trial, the State confined its case-in-chief to the presentation of evidence of Defendant's sexual offenses against J.O. and T.D. which occurred after the two victims met and became friends. Defense counsel, however, cross-examined J.O. at length about her grandfather's inappropriate conduct when she was eight years old, and before she had met T.D. Thus, the jury was left with the clear implication that J.O.'s grandfather was the first person to sexually abuse J.O. and the first person to provide J.O. with a knowledge of sexual matters. The State was entitled to rebut this evidence. Defendant is not entitled to relief on this issue.

## VI. Admissibility of Prior Conviction

Defendant argues that the trial court erred in ruling that his prior felony conviction for child abuse could be used for impeachment purposes pursuant to Rule 609 of the Tennessee Rules of Evidence

should he choose to testify. Defendant filed a pre-trial motion seeking to prohibit the admission of this felony conviction and requested a hearing. A transcript of the hearing on Defendant's motion is not included in the record. The minutes of the court indicate that the trial court denied Defendant's motion.

At the close of the State's case-in-chief, the trial court conducted a *Momon* hearing during which Defendant elected not to testify based on in part on defense counsel's advice and in part on the potential admission of his prior conviction of child abuse. In response to the trial court's questioning, Defendant acknowledged that he was aware that the State would not be able to examine him as to the details behind his prior conviction and that the jury would be instructed that they should not consider the conviction for any purpose other than as to Defendant's credibility.

Defendant made an offer of proof as to what his testimony would have been at trial had he chosen to testify. Defendant denied that he had committed the charged offenses against J.O. and T.D. Defendant stated that on the day that T.D. made her allegations against him, he and T.D. had attended a barbeque at T.D.'s mother's house. Defendant said that a neighbor, Dede Flitcroft, became angry with him because he would not give her anything to drink, and T.D.'s mother gave Defendant the last of her pain pills, which Ms. Flitcroft wanted. Defendant said that he went to Ohio during the investigation because he had received some threats from residents of his apartment complex but that he kept in contact with Ms. Moultry.

On cross-examination, Defendant acknowledged that he had only met Ms. Flitcroft once before the barbeque. He stated that only about twenty minutes passed between the time that Ms. Flitcroft left the barbeque and T.D. made her allegations.

Tennessee Rule of Evidence 609 provides, in pertinent part, as follows:

> If the witness to be impeached is the accused in a criminal prosecution, the [s]tate must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule on the admissibility of such proof prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

Tenn. R. Evid. 609(a)(3). This rule permits the State to use the prior convictions of a defendant to challenge his credibility on the following conditions:

> (1) the prior conviction must be punishable by death or imprisonment for over one year or must involve a crime of dishonesty or false statement;
>
> (2) less than ten years must have elapsed between the defendant's release from confinement for the prior offense and the commencement of the prosecution;
>
> (3) the State must give reasonable pretrial written notice of the impeaching conviction;
>
> (4) the trial court must find that the impeaching conviction's probative value outweighs its unfair prejudicial effect on the substantive issues.

*State v. Waller,* 118 S.W.3d 368, 370–71 (Tenn.2003); *see* Tenn. R. Evid. 609(a)(2), (3), and (b).

■ "To be *eligible* as an impeaching conviction, a prior *felony* conviction need not involve dishonesty." *State v. Thompson*, 36 S.W.3d 102, 109 (Tenn. Crim.App.2000) (emphasis in original). However, the trial court must determine whether the probative value of a conviction on the issue of credibility outweighs its unfair prejudicial effect upon the substantive issue. "First, the court must 'analyze the relevance the impeaching conviction has to the issue of credibility' and 'explain [the relevance] on the record,' ... and second, it must 'assess the similarity between the crime on trial and the crime underlying the impeaching conviction.'" *Id.* (quoting *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn.1999)).

■ In this instance, the record does not include the trial court's analysis of why Defendant's prior sex abuse conviction was probative on the issue of credibility. It is the duty of the defendant to prepare a fair, accurate, and complete record on appeal to enable meaningful appellate review. *See* Tenn. R.App. P. "Generally, this court is precluded from addressing an issue on appeal when the record fails to include relevant documents." *See id.*; *State v. Robinson*, 73 S.W.3d 136, 154 (Tenn.Crim.App.2001) (citing *State v. Bennett*, 798 S.W.2d 783 (Tenn.Crim.App.1990)). The appellate court is limited to review of only the facts set forth in the record. *See* Tenn. R.App. P. 13(c). If the record on appeal is deficient by not including a record of actions which are relevant to the issue, then this court may presume that the trial court's determinations were adequately supported by the evidence. *See Smith v. State*, 584 S.W.2d 811, 812 (Tenn.Crim.App.1979). Based on our review of the record, we conclude that Defendant is not entitled to relief on this issue.

## VII. Sentencing Issues

Defendant argues that the trial court erred in determining the length of his sentences and in imposing consecutive sentencing.

At the sentencing hearing, the State relied on Defendant's presentence report and J.O.'s psychological evaluation prepared by Dr. Erin Fowler with the Vanderbilt University Medical Center, both of which were introduced as exhibits without objection.

Jeff Burks testified at the sentencing hearing that he served as assistant district attorney for Williamson County at the time Defendant was indicted in 1995 on two counts of aggravated child abuse, one count of DUI, one count of violation of the open container law, and one count of driving without a license. Mr. Burks said that Defendant pled guilty to one count of felony child abuse, one count of misdemeanor child abuse, and one count of DUI, first offense. The State entered a nolle prosequi as to the other two counts of the indictment. Following a sentencing hearing on these charges, Defendant was ordered to serve forty-five days in confinement followed by a probationary term of four years. Mr. Burke said that the charges arose out of an incident where Defendant burned his son's and stepson's fingers on a wall heater after an argument.

According to Dr. Fowler's evaluation, J.O. has been under the supervision of the Child Advocacy Center since September 2002. In March 2003, J.O. was hospitalized at the Vanderbilt Psychiatric Hospital following suicidal ideations and auditory hallucinations of Defendant telling J.O. to kill herself. J.O. was receiving psychiatric treatment at Vanderbilt Mental Health Center at the time of the sentencing hearing. She has been diagnosed with post-traumatic stress disorder and has been prescribed Zoloft, Adderall, and Seroquel. Dr. Fowler observed that J.O. has been

exposed to a great deal of domestic violence between her parents, and between her father, herself, and her siblings, in addition to the long-term sexual abuse by her father which occurred almost every night. J.O. reported frequent nightmares in which Defendant kills her.

Dr. Fowler noted that J.O. is preoccupied with sex and demonstrates a "seductive, flirtatious behavior with men." Concern for her treatment recently surfaced when J.O. initiated sexual contact with one of her brothers. Dr. Fowler concluded that "[s]ome of this [sexual] activity may have provided pleasurable feelings and a sense of closeness to others, which [J.O.] is likely to have craved in her previous family life. . . . It may have been an effective source of power or influence or means to getting her needs met in a context in which she was otherwise neglected and abused." J.O. exhibited complex feelings about her relationship with Defendant and displayed a "pervasive sense of threat and fear that he would kill her."

Dr. Fowler recommended that although the type of services J.O. was receiving seemed appropriate, "the intensity of treatment should be increased" and her current psychotropic medication continued.

At the conclusion of the sentencing hearing, the trial court found that enhancement factor one, Defendant has a previous history of criminal convictions or behavior, was applicable to all counts based on Defendant's prior criminal history. T.C.A. § 40–35–114(1). The trial court applied enhancement factor (4), a victim of the offense was particularly vulnerable because of age or physical or mental disability, to all counts involving J.O. as the victim. *Id.* § 40–35–114(4).

The trial court found that the offenses supporting Defendant's rape convictions against both victims were committed to gratify his desire for pleasure or excitement, enhancement factor (7), based on the evidence presented that Defendant exposed the victims to pornography prior to initiating some of the acts, that he positioned the victims in various ways to perform sexual acts while he watched, and that he told J.O. her mother would have been proud of her for engaging in sexual activities with him. *Id.* § 40–35–114(7).

The trial court found that Defendant abused a position of trust as to both victims and thus applied enhancement factor (14) to all counts.

Based on the presence of these enhancement factors and no mitigating factors, the trial court sentenced Defendant to twenty-five years for each rape conviction and eleven years for each aggravated sexual battery conviction.

The trial court ordered counts 1, 3, 5, 6, and 7, involving T.D. as the victim, to be served concurrently for an effective sentence of twenty-five years as to these counts. The trial court found that consecutive sentencing was appropriate, however, for counts 9, 10, 11, 12, 15, 16, and 18, based on the circumstances surrounding the offenses involving Defendant's daughter, J.O., as the victim. *See id.* § 40–35–115(5). The trial court ordered Defendant to serve his sentences for his convictions in counts 9, 10, 11, 12, 15, 16, and 18, consecutively to each other and consecutively to counts 1, 3, 5, 6, and 7, for an effective sentence of 172 years.

## A. General Principles

Defendant's sentencing hearing was conducted on December 14, 2005. Our legislature recently amended several provisions of the Criminal Sentencing Reform Act of 1989, which became effective June 7, 2005. The Act provides that defendants who are sentenced after June 7, 2005, for offenses committed before that date may elect to be

sentenced under the provisions of the Act by executing a waiver of the defendant's ex post facto protections. 2005 Tenn. Pub. Acts ch. 353, § 18. The record indicates that Defendant executed a waiver of his ex post facto protections and elected to be sentenced under the provisions of the new Act. Accordingly, the statutes cited in this opinion are those that were in effect at the time that Defendant was sentenced.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40–35–113 and 40–35–114; (6) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. *See* T.C.A. § 40–35–210(b) (2005); *State v. Imfeld,* 70 S.W.3d 698, 704 (Tenn. 2002).

The 2005 amendments to the Sentencing Act rendered the enhancement factors advisory only and abandoned a statutory minimum sentence. *See* T.C.A. §§ 40–35–114, –35–210(c). As amended, the trial court is required to impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. The statute further provides that "[i]n imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by" certain advisory guidelines, including the presence or absence of enhancement factors. *Id.* § 40–35–210(c)(2).

When a defendant challenges the length, range or manner of service of a sentence, it is the duty of this Court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40–35–401(d). The presumption is contingent upon the trial court placing on the record, "either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40–35–210(e). The defendant bears the burden of showing that his sentence is improper. *Id.* § 40–35–401, Sentencing Commission Comments.

Defendant, a Range I offender, was convicted of seven counts of rape, a Class A felony, which is subject to a sentencing range of between fifteen and twenty-five years, and aggravated sexual battery, a Class B felony, which is subject to a sentencing range of between eight and twelve years. *Id.* § 40–35–112(a)(1) and (2).

### B. Enhancement Factors

Defendant argues that the trial court erred in determining the length of his sentences for his rape of a child and aggravated sexual battery convictions because it misapplied enhancement factor (4) to those counts involving J.O. as a victim, and enhancement factor (7) to Defendant's rape of a child convictions as to both victims. The State argues initially that the 2005 amendments to the Criminal Sentencing Reform Act of 1989 eliminated a criminal defendant's statutory right to appeal a trial court's application of one or more statutory enhancement factors in determining the length of the defendant's sentence.

Both before and after the 2005 amendments, the Criminal Sentencing Reform

Act provided that a "defendant in a criminal case may appeal from the length, range or the manner of service of the sentence imposed by the sentencing court." T.C.A. § 40–35–401(a) (2005) and (2004). The 2005 amendments provide that an appeal must be related to one or more of the following grounds:

> (1) [t]he sentence was not imposed in accordance with this chapter; (2)[t]he sentence is excessive under the sentencing considerations set out in §§ 40–35–103 and 40–35–210; or (3)[t]he sentence is inconsistent with the purposes of sentencing set out in §§ 40–35–102 and 40–35–103.

*Id.* § 40–35–401(b) (2005).

Prior to the 2005 amendment to section 40–35–401, subsection (b)(2) read: "The enhancement and mitigating factors were not weighed properly, and the sentence is excessive under the sentencing considerations set out in § 40–35–103." The State argues that by eliminating the phrase, "[t]he enhancement and mitigating factors were not weighed properly," and making the statutory enhancement factors advisory only, the Tennessee General Assembly evidenced an intent to eliminate appellate review of a trial court's application of enhancement factors in determining the length of a criminal defendant's sentence.

The 2005 amendments arose out of a concern by the Tennessee General Assembly that the provisions of Tennessee's Criminal Sentencing Reform Act of 1989 may violate a defendant's constitutional Sixth Amendment right to trial by jury as contemplated by the United States Supreme Court in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and its progeny. *See also Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007); *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Thus, the

2005 amendments abandoned a statutory presumptive minimum sentence and directed a trial court to impose a sentence within the applicable range. The 2005 amendments set forth certain "advisory sentencing guidelines" which the trial court is required to consider but is not bound by. These include:

> (1) [t]he minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and (2) [t]he sentence length within the range should be adjusted, as appropriate by the presence or absence of mitigating and enhancement factors set out in §§ 40–35–113 and 40–35–114.

T.C.A. § 40–35–210(c).

Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. *State v. Goodman,* 90 S.W.3d 557, 563 (Tenn.2002). Our supreme court has directed that:

> [l]egislative intent is to be ascertained primarily from the natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language. [*State v.*] *Alford,* 970 S.W.2d 944, 946 [Tenn. 1998]; *Carter* [*v. State* ], 952 S.W.2d [417,] 419 [Tenn. 1997]. Courts are restricted to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity exists which requires further inquiry to ascertain legislative intent. *Browder v. Morris,* 975 S.W.2d 308, 311 (Tenn.1998). The language employed must be considered in the context of the entire statute, and the component parts of a statute should be construed, if possible, consistently and reasonably. *Alford,* 970 S.W.2d at 946; *Wilson* [*v.*

*Johnson County* ], 879 S.W.2d [807,] 809 [Tenn. 1994]. Furthermore, we are to assume that the legislature used each word in the statute purposely, and that the use of these words is intended to convey a meaning and serve a purpose. *Browder*, 975 S.W.2d at 311. Where the language of the statute is clear and plain and fully expresses the legislature's intent, resort to auxiliary rules of construction is unnecessary, and we need only enforce the statute. *Id.*

*Goodman*, 90 S.W.3d at 563–64.

A defendant has the statutory right to appeal a sentence not imposed in accordance with the Criminal Sentencing Reform Act. T.C.A. § 40–35–401(b)(1). Specifically, a defendant may raise as a ground on appeal that his sentence is excessive under the sentencing considerations set forth in section 40–35–210, which section includes a trial court's consideration of enhancement factors in determining the length of a sentence. *Id.* § 40–35–210(c)(2). The trial court is required to place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id.* § 40–35–210(d). Once applied, the chosen enhancement factor becomes a sentencing consideration subject to review under Tennessee Code Annotated section 40–35–401(c)(2). Thus, Defendant's challenge to the length of his sentences relate to the sentencing considerations set forth in Tennessee Code Annotation section 40–35–210, and we will consider his issue concerning the trial court's application of enhancement factors.

■ Defendant argues that the trial court erred in finding that the rape offenses were committed to gratify his desire for pleasure or excitement. *See* T.C.A. § 40–35–114(7). "Essential to proper application of this factor is the determination of the defendant's *motive* for committing the offense." *State v. Arnett*, 49 S.W.3d 250, 261 (Tenn.2001) (citing *State v. Kissinger*, 922 S.W.2d 482, 490 (Tenn.1996)). Such motivation may be shown by sexually explicit remarks by the defendant, overt sexual displays or otherwise behaving in a sexual manner. *Arnett*, 49 S.W.3d at 262.

■ The trial court found that enhancement factor (7) was appropriate because Defendant showed pornographic videos to the victims and then instructed them to do the same type of activity; Defendant placed the victims in various sexual positions and watched them perform; J.O. was "basically . . . a surrogate for her mother in terms of sexual behavior;" and Defendant told J.O. that her mother would be proud of her for engaging in sexual activities with Defendant.

Based on the foregoing, we conclude that the record supports the trial court's finding that the rape offenses were committed to gratify Defendant's desire for pleasure or excitement. *See State v. Jones*, 953 S.W.2d 695, 699 (Tenn.Crim. App.1996) (concluding that the record supported a finding that the defendant raped his daughter to gratify a desire for pleasure because he treated his daughter as if she were his girlfriend, he wanted her to act as if she was enjoying their sexual encounters and he instructed her to participate by moaning and acting aroused). Defendant is not entitled to relief on this issue.

Defendant argues that the trial court erred in applying enhancement factor (4) to his sentences for the offenses involving J.O. as a victim because the State failed to prove that J.O. was "particularly vulnerable" within the meaning of Tennessee Code Annotated section 40–35–114(4). This enhancement factor is warranted if a

"victim of the offense was particularly vulnerable because of age or physical or mental disability." *Id.*

 Under prior statutory law, our Supreme Court has directed that a victim's natural physical or mental limitations may be considered as an enhancement factor when such limitations render the victim particularly vulnerable "because of an inability to resist, a difficulty in calling for help, or a difficulty in testifying against the perpetrator." *State v. Kissinger*, 922 S.W.2d 482, 487 (Tenn.1996) (citing *State v. Hayes*, 899 S.W.2d 175, 185 (Tenn.Crim. App.1995)). It is the State's burden to prove that the victim's limitations rendered her particularly vulnerable. *State v. Adams*, 864 S.W.2d 31, 35 (Tenn.1993). "In determining whether the State has met its burden, the trial court must consider a number of factors and must make factual findings." *State v. Poole*, 945 S.W.2d 93, 96 (Tenn.1997). "It should consider whether evidence in the record with regard to the victim's age or physical and mental attributes demonstrated an inability to resist the crime, summon help, or testify at a later date." *Id.* at 97.

The trial court found:

I'm not going to apply [enhancement factor (4)] to the [T.D.] counts, and that is because of [J.O.]'s specific relationship with her father and then her testimony, if you recall, that she talked about, most particularly under the questioning of [defense counsel], and that is why you did not report this? Why did you, even after you were removed from the home, why did you not report this? And that was because she was afraid. [Defendant] had threatened her. She had seen the physical violence, and also because while all of this is going on, the defendant kept telling her that, well, when you love somebody, this is what you do. It was sort of the part of the whole love

kind of situation. This is even mentioned in the psychological [evaluation] is that [J.O.] thinks that this is a way that you behave when you love somebody, and that is particularly vulnerable when you take your daughter and say this is how you behave when you love someone, so I'm going to apply [enhancement factor (4)] to all of the [J.O.] counts, which is those I've mentioned.

 There is no doubt from the record, and Defendant does not contend otherwise, that he violated a position of private trust as contemplated in enhancement factor (14). There is also no doubt that the environment in which J.O. was raised, that is acting as Defendant's surrogate "wife" for sexual purposes after her mother died, had a tremendous psychological impact on J.O. for which she will need to continue treatment for an indeterminate amount of time according to the psychological evaluation. While the psychological abuse she suffered may not have left J.O. "vulnerable" as contemplated within the parameters of enhancement factor (4), her psychological injuries are certainly proper for consideration under enhancement factor (6).

This factor provides that a defendant's sentence may be enhanced if the personal injuries inflicted upon the victim were particularly great. T.C.A. § 40–35–114(6). Our supreme court has stated:

[w]hile we recognize that all victims of crimes, certainly victims of rape, must surely experience mental trauma, we are aware that no two crimes are exactly the same, and no two victims react to this crime in the same manner. Because some victims may suffer even more emotional trauma than is normally involved with this offense, our legislature has seen fit to enhance the punishment for those defendants causing "particularly great" psychological injury.

*Arnett*, 49 S.W.3d at 260. J.O.'s psychological evaluation, in addition to her trial testimony, are replete with evidence of the psychological injuries she suffered and continues to suffer as a result of Defendant's conduct.

Nonetheless, even if enhancement factor (4) was improperly considered, the presence of the remaining factors support Defendant's sentences for rape of a child and aggravated sexual battery. Defendant is not entitled to relief on this issue.

### C. Consecutive Sentencing

■ Defendant argues that the trial court erred in ordering him to serve his sentences for his convictions in counts 9, 10, 11, 12, 15, 16, and 18, consecutively to each other and consecutively to his sentences for the remaining counts. The trial court relied on Tennessee Code Annotated section 40–35–115(b)(5) to support the partial imposition of consecutive sentencing as to those convictions involving J.O. as the victim. This statutory provision provides that a trial court may impose consecutive sentencing if it finds by a preponderance of the evidence that:

[t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

The trial court found:

the [sexual offenses] with [J.O.] went on for years, and the physical and mental damage is quite great. I mean, her testimony was that the defendant is the one who started her out on this path. She has also been abused by her grandfather and brothers, and throughout all this, she is told that this is what you do when you love somebody. Your mother would be proud of you. All of that is just a horrendous thing, and if you look at the psychological, she is damaged. She has been suicidal. She has great issues with her sexual perspective, and needs treatment for a long period of time[.]

After a review of the record, we find, as did the trial court, that the imposition of consecutive sentences was proper pursuant to Tennessee Code Annotated section 40–35–115(b)(5). Defendant was J.O.'s sole parent and guardian. The sexual offenses went undetected for three or four years. J.O. testified as to numerous types of sexual abuse including cunnilingus, fellatio, digital penetration, and masturbation. In addition, Defendant made J.O. engage in sexual activities with T.D. while he watched. Dr. Fowler's psychological evaluation outlines in detail the substantial emotional and psychological impact that Defendant's conduct had on J.O., with a recommendation that J.O. continue with therapy on a long-term basis.

■ We conclude that the evidence establishes sufficient grounds to support a finding that consecutive sentencing is appropriate pursuant to section 40–35–115(b)(5). In sexual abuse cases, as in other cases, consecutive sentences must be reasonably related to the severity of the offenses involved. *State v. Taylor*, 739 S.W.2d 227, 230 (Tenn.1987). Based on our review of the record, a combination of concurrent and consecutive sentences is appropriate in relation to the severity of the offenses and are the least severe measures necessary to deter Defendant's future

criminal conduct, to protect society, and to deter others who are similarly situated and may be likely to commit similar offenses. *See* T.C.A. §§ 40–35–102(1), –103(2) (2003); *Taylor*, 739 S.W.2d at 230. Defendant is not entitled to relief on this issue.

**CONCLUSION**

After a thorough review of the record, we affirm the judgments of the trial court.