# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 18, 2009 Session

## STATE OF TENNESSEE v. JOSEPH S. RITTENBERRY

**Direct Appeal from the Criminal Court for Sumner County**
**No. 615-2006      Dee David Gay, Judge**

---

**No. M2008-01308-CCA-R3-CD - Filed April 28, 2010**

---

The Defendant-Appellant, Joseph S. Rittenberry, pled nolo contendere in Sumner County to three counts of attempted aggravated sexual battery, a Class C felony. The trial court sentenced Rittenberry to six years in the Tennessee Department of Correction for each conviction, to be served concurrently. On appeal, Rittenberry claims the trial court erred in denying alternative sentencing. Following our review, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

James Robin McKinney, Jr., Nashville, Tennessee, for the Defendant-Appellant, Joseph S. Rittenberry.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Sallie Wade Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Background**. Rittenberry was indicted by the Sumner County Grand Jury for three counts of aggravated sexual battery. He  pled nolo contendere to the amended charges of attempted aggravated sexual battery. The record does not include a transcript of the plea hearing; however, we find the transcript from the sentencing hearing is sufficient to determine if the trial court erred in sentencing. See State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999) (finding that despite the absence of the transcript from the plea hearing, the record was sufficient to address the issue of sentencing).

The first witness to testify at the sentencing hearing was Detective John Denny Coarsey of the Hendersonville Police Department. Detective Coarsey was contacted by the Department of Children's Services (DCS) about the possible sexual abuse of a minor. The DCS had interviewed the victim, who claimed that at age twelve, she was sexually abused by her stepfather, Joseph Rittenberry. The State questioned Detective Coarsey as follows:

THE STATE: Was [the victim] interviewed concerning what had occurred between herself and her stepfather?

DETECTIVE COARSEY: Yes. [The victim] with DSC basically conducted the interview. She related three instances over a period, I believe, was November 2005. I think the second one was in January of '06, and if my memory recalls, the third one was in about May of '06.

THE STATE: And during these reports by [the victim], did she relay to [DCS] and then later to, I think, us in a meeting that she had been touched by her stepfather?

DETECTIVE COARSEY: Yes, she did.

THE STATE: In what areas of the body was he touching her?

DETECTIVE COARSEY: The incident started with horseplay. I believe it was her first instance she reported in the living room when Mom was gone in which he was on top of her and put his hands under her shirt, touching her breast area.

THE STATE: And in the other occasions?

DETECTIVE COARSEY: The other two were in the laundry room of the residence on two separate occasions in which he pulled down the victim's pants and touched her on the breast and vaginal area, the last time skin to skin, no penetration.

THE STATE: After the last incident occurred – I believe that last incident was in May of '06. That very weekend she told a friend; is that correct?

DETECTIVE COARSEY: Correct. My recollection is she reported it to a school teacher, and also that weekend she went to spend the night with a

family friend who had a daughter her age, and she confided in the daughter who told the mother.

After Detective Coarsey received this information from the DCS, he interviewed Rittenberry at his residence. Detective Coarsey stated:

> Mr. Rittenberry denied any knowledge. He said anyone that would do that was sick. He told me that he had been accused in the past with his stepdaughter of – by family members. That was over a family dispute, the way I took it, but basically denied any involvement.

> He said that he had removed her from the church or wasn't allowing her to go to her church. She was upset over that, and then I'm trying to recall. There was one other that she was upset about and he was basically indicating those were the reasons she might have made these allegations against him.

On a later date, Detective Coarsey telephoned Rittenberry and requested that he come to the police station for computer voice stress analysis and another interview. Rittenberry came to the station accompanied by his wife, who is the mother of the victim. The wife was not present during the interview. Rittenberry admitted on tape that the victim's allegations were true. He said he spoke with his preacher, and the preacher had set up counseling. Rittenberry testified that before the incidents of sexual abuse, he fantasized about the victim. After the interview, Detective Coarsey told Rittenberry's wife that her husband confessed to the alleged crimes. She became upset and asked Rittenberry why he confessed to something he did not do. Rittenberry told her "it was just the best thing to do at this time." Detective Coarsey asked Rittenberry whether his confession was truthful. Rittenberry did not provide a definitive response until his wife walked off. He then reaffirmed that the allegations were true, but he wanted to "leave [his wife] out of it."

Detective Coarsey testified that Rittenberry was "very cooperative" during the investigative process, despite the initial denial. Detective Coarsey learned that the victim now lives in Alabama with her grandparents. He believed she was moved because her mother was upset with her for raising the allegations. The State introduced a juvenile court order showing that the victim's grandparents have joint custody of the victim with the victim's mother.

Scott Little of the Tennessee Probation and Parole office testified that he met with Rittenberry and discussed the rules and directives of probation and parole. Little said he informed Rittenberry that prior to his sentencing, he needed to register with the Tennessee Bureau of Investigation sex offender registry. Rittenberry responded that he had a court

order stating he did not have to register. He did not, however, provide a copy of this order. Later, Little informed Rittenberry that he was in violation of a statute requiring that he register as a sex offender. Rittenberry again responded that he had an order, which he failed to produce. Little informed the Henderson Police Department that Rittenberry was refusing to register. Little said Rittenberry eventually registered three months after entering his plea petition.

Dr. Donna Moore testified that she is a licensed psychologist and has conducted over 1,300 psychosexual interviews. She evaluated Rittenberry and reported her findings in a report entitled "Psychosexual Risk Assessment." The "Summary and Conclusions" section states:

> Mr. Joseph Scott Rittenberry is a 37-year-old, married, Caucasian male who was referred for a presentence psychosexual evaluation. He left high school and has been employed in construction, landscaping, and iron work before starting his business as a handyman. He admitted a history of substance abuse including use after he completed substance abuse treatment at the age of 17. He admitted a history of criminal misconduct including convictions for stealing automobile stereos as well as domestic violence against his first wife. Mr. Rittenberry has accepted a plea agreement to three sexual offenses against his stepdaughter who was 12 years old at the time of the offenses. He denied he did anything sexual to her but reported he admitted he did so to the detective during questioning in order to go home. He reported he was not allowed to have an attorney, and once he retained an attorney, was informed that he could do nothing but accept the guilty plea due to his confession.

> Mr. Rittenberry denied any misconduct with his stepdaughter. Testing indicated a deliberate attempt at impression management and trying to appear as if he had no problems. Risk assessment estimated his risk for sexual recidivism to be in the low category when considering static traits. When considering dynamic factors his risk is enhanced. Risk can be managed through an appropriate containment model of supervision, treatment, and polygraphy. As Mr. Rittenberry denied he engaged in sexual misconduct, he is not appropriate for treatment services at this time. If he is willing to admit his deviance and work to manage his risks, he could participate in a community-based sex offender treatment program. Mr. Rittenberry should be provisionally accepted once he admits his offense to a therapist and [is] monitored for compliance.

The report offered nine recommendations for Rittenberry, the first of which stated:

It is recommended that Mr. Rittenberry receive sex-offender-specific mental health treatment once he admits to a sexual deviance problem. Treatment should be conducted by therapists competent in the area of sexual offender dynamics and who are currently approved by the Sex Offender Treatment Board. At this time, it appears that Mr. Rittenberry **is not** in need of a secure-type facility.

At the hearing, Dr. Moore's testimony was consistent with the conclusions of her report. She said Rittenberry displayed poor insight, which speaks to one's awareness of a problem. Rittenberry denied sexually assaulting or fantasizing about the victim, although he admitted to "engaging in horseplay" and accidentally seeing her naked. In Rittenberry's psychosexual history, he admitted having over 100 sexual partners and group sex. Dr. Moore testified that Rittenberry scored very high on the lie scale, which generally indicates one's failure to appreciate the consequences of his behavior. She did not recall Rittenberry exhibiting empathy for the victim. Dr. Moore marked Rittenberry under the low category of sexual recidivism partly because the research shows "incest offenses are at a lower risk than somebody who goes out and abducts a stranger." Dr. Moore said she was not aware of any Tennessee treatment program that would accept someone who denied committing the acts for which he sought treatment.

On cross-examination, Dr. Moore testified that most defendants charged with sexual abuse are in denial. She stated, however, that there are varying levels of denial. Rittenberry denied that he committed the illegal acts. This level of denial is distinguishable from those who accept responsibility for their actions but are in denial of the harm caused to the victim or the seriousness of the offense. The trial court asked Dr. Moore about the effect of Rittenberry's denial. Dr. Moore responded, "If he's not able to admit that he did something sexual, for a sexual motive, he would not be appropriate to even get started on that process of those other pieces of denial."

Rittenberry's stepfather, Garland Edward Flatt, testified that Rittenberry moved into his house after the allegations of sexual misconduct surfaced. Rittenberry lost his job and was forced to sell his home. Flatt stated that Rittenberry attends religious services each week and has not appeared drunk or under the influence of illegal drugs. Flatt said he would continue to provide his stepson with a place to stay if placed on probation. Flatt did not believe that Rittenberry was a pedophile. Flatt described the victim as difficult to talk to and possibly bi-polar. Flatt said Detective Coarsey told Rittenberry that he would probably get a year's probation and counseling if convicted.

At the conclusion of the hearing, the trial court sentenced Rittenberry to six years for each count of attempted aggravated sexual battery, to be served concurrently. It found three

enhancement factors under Tennessee Code Annotated section 40-35-114 were present. First, it determined that enhancement factor one was applicable because of Rittenberry's history of criminal convictions and criminal behavior. His history includes stealing stereos from automobiles, domestic violence, and illegal drug use. The trial court also found that enhancement factor four was present because of the victim's vulnerability as a twelve-year old. Lastly, the trial court determined that enhancement factor fourteen was applicable because Rittenberry abused a position of private trust as the victim's stepfather. The trial court placed "great weight" on this last factor. It did not find that any mitigating factors were present. It also determined that consecutive sentencing was not appropriate.

Next, the trial court addressed the issue of alternative sentencing. It stated:

> Now, that leaves us with what are we going to do? Are we going to give him alternative sentencing, are we going to give him split confinement, or are we going to send him to the Tennessee Department of Correction? There are numerous factors that I must look at in this consideration.

> First and foremost here, along the list of factors in cases is his physical, mental and social history. His physical condition is good. His mental condition is – although technically there doesn't appear to be anything wrong, he's in a state of denial, and I have a problem with that because I don't see how anybody can [be] helped – I can try to extend my hand in rehabilitation – if he doesn't want to be helped or if he doesn't admit a problem.

> The social history is absolutely horrendous, 10th grade education, no significant employment history, no employment now, and bankruptcy.

> I've also considered the facts and circumstances surrounding the offense and the nature and circumstances of the conduct involved. You've got a stepfather and a stepdaughter, and I have told you how I feel about that relationship. You've got three instances over a six-month period where he ran his hands up her shirt, kissed her breasts; another instance, ran his hands over her vagina with her panties on. In the last incident he did it skin to skin. That's inexcusable. And then you put on top of that the effect, the nature and circumstances of the criminal conduct.

> Mr. Rittenberry, your stepdaughter said, I told what was happening and I lost my mother. Do you know what it's like to lose your mother and father under these circumstances when you're kicked out?

I didn't know what to do. I didn't know what to tell my little sister. We were put in foster care, and I didn't do anything wrong. She's kicked out; you're at home; and she didn't do anything wrong. Can you even appreciate that? I have not seen one iota anywhere that you appreciate what's happened to this little girl. Although I might not be able to point with my finger to a report saying this, this, this, this, and this are the effects, she's got to live with that every day of her life. Her stepfather abused her. Her mother kicked her out of the house and chose you. I consider that in the nature and circumstances of the criminal conduct involved.

I've considered your prior criminal history. I've considered your actions and character. Where are your other children? They're not in your life. You haven't seen them in eight years. Your two children you have here got out of the house and are in Alabama.

There's denial of right and wrong, a failure to address right and wrong. There's a failure to embrace the truth. Truth is not what you want it to be. It's not what you spin it to be. It's that which is real, that which is reality, that which conforms with reality. That is not present in your life.

You didn't register as a sex offender when you were asked to do it. They talked [to] you at probation. Your attorney can't take the blame for that. They gave you time to do it, and they went there again and you still didn't do it. We had to tell you to bring in tax returns and your wife finally did it. Your character, integrity is zero, zip, nada.

Reasonably expected to be rehabilitated, I don't see any reasonable expectation of rehabilitation. I don't see any need to try because you haven't tried yet. It's been two years, and you haven't taken one step to acknowledge that.

I've considered the possibility of protecting others from you. I've considered the seriousness of the offense and the deterrent effect. The deterrent effect is terrible. It's a sad state of affairs when a little girl 12 years old has the memories of what you did to her and the fact that she was kicked out of the house. The deterrent effect is great. Those like you need to be deterred.

Therefore, I'm denying probation. The sentence will be six years at 30 percent on each count. They will run concurrently with each other, and you'll

serve that in the Tennessee Department of Corrections, and that will be the order of the Court. You'll be in custody and you may go.

After entry of the judgments, Rittenberry filed a timely notice of appeal.

## ANALYSIS

**Alternative Sentencing**. Rittenberry claims the trial court erred in denying alternative sentencing. Specifically, he argues the trial court failed, under Tennessee Code Annotated section 40-35-103(5), to consider his "potential or lack of potential" for rehabilitation or treatment. Rittenberry requests this court to vacate his sentence and order his release to probation. In response, the State argues the trial court did consider Rittenberry's potential for rehabilitation, and that Rittenberry failed to prove he was a suitable candidate for alternative sentencing. Upon review, we agree with the State.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2005). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant, not the State, has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2005), Sentencing Commission Comments.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). A trial court, when sentencing a defendant or determining alternative sentencing, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2005); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007).

Tennessee Code Annotated section 40-35-102(5) (2005) gives courts guidance about the types of individuals who should be required to serve their sentence in confinement:

In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure to past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

In determining whether a defendant should be required to serve a sentence of confinement, the trial court must consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A) - (C) (2005); see also Ashby, 823 S.W.2d at 169. The sentence imposed by the trial court should be the least severe measure necessary to achieve the purpose for which the sentence is imposed. T.C.A. § 40-35-103(4). Additionally, the court should examine the defendant's potential for rehabilitation or treatment. See T.C.A. § 40-35-103(5). If a defendant is an especially mitigated or standard offender convicted of a Class C, D, or E felony, he should be viewed as a favorable candidate for alternative sentencing in the absence of evidence to the contrary. T.C.A. § 40-35-102(6).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. See T.C.A. § 40-35-303(a) (2005). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. T.C.A. § 40-35-303(b) (2005). No criminal defendant is automatically entitled to probation as a matter of law. Id., Sentencing Commission Comments; see State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citation omitted).

When considering probation, the trial court should also examine the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present condition, including physical and mental condition, and the deterrent effect on the defendant. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999). Moreover, our supreme court has held that "truthfulness is certainly a factor which the court may consider in deciding whether to grant or deny probation." State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983).

Here, Rittenberry claims the trial court violated a principle of the Criminal Sentencing Reform Act by not considering his potential or lack of potential for rehabilitation. See T.C.A. § 40-35-103(5). He argues the trial court failed to consider this principle because it ignored Dr. Moore's "unrebutted proof" that he needed rehabilitation and that he did not require a secure-type facility. Upon review, Rittenberry's claim is not supported by the record. In the trial court's findings, it stated:

> There's denial of right and wrong, a failure to address right and wrong. There's a failure to embrace the truth. Truth is not what you want it to be. It's not what you spin it to be. It's that which is real, that which is reality, that which conforms with reality. That is not present in your life.
>
>     . . . .
>
> Reasonably expected to be rehabilitated, I don't see any reasonable expectation of rehabilitation. I don't see any need to try because you haven't tried yet. It's been two years, and you haven't taken one step to acknowledge that.

These statements were made in response to Dr. Moore's testimony about the effect of Rittenberry's denial. Dr. Moore testified that Rittenberry would not be accepted for rehabilitation until he admitted sexually abusing his stepdaughter. The record shows that the

-10-

trial court considered Rittenberry's potential for rehabilitation and found that his persistent denial prevented him from being a suitable candidate for rehabilitation at the time of sentencing. This finding is consistent with the testimony of Dr. Moore who said Rittenberry needed treatment, but was not yet ready.

We acknowledge that the trial court did not expressly address under section 40-35-103(C), whether "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]" However, the record shows that the trial court considered the other applicable sentencing principles in section 40-35-103, as well as the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present condition, including physical and mental condition, and the deterrent effect on the defendant. See Kendrick, 10 S.W.3d at 656. Additionally, Rittenberry's lack of truthfulness weighed heavily in the trial court's decision. Bunch, 646 S.W.2d at 160. Following our review, Rittenberry has not shown that the trial court erred by denying alternative sentencing. Therefore, he is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

-11-