IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 2, 2010 Session

**STATE OF TENNESSEE v. CHARLES HAYWOOD**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-05905    John T. Fowlkes, Jr., Judge**

---

**No. W2009-01994-CCA-R3-CD  - Filed September 7, 2010**

---

The Defendant-Appellant, Charles Haywood, was indicted by the Shelby County Grand Jury for one count of especially aggravated kidnapping, one count of attempted second degree murder, one count of aggravated robbery by use or display of a deadly weapon, and one count of possessing a firearm in the commission of attempted second degree murder. He entered an open guilty plea to one count of aggravated robbery, a Class B felony, as a Range I, standard offender, and the Shelby County Criminal Court sentenced him to twelve years of confinement in the Tennessee Department of Correction. On appeal, Haywood argues that his sentence is excessive. Upon review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Jennifer D. Fitzgerald, Memphis, Tennessee, for the Defendant-Appellant, Charles Haywood.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Theresa S. McCusker, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

**Guilty Plea Hearing.** At the guilty plea hearing on August 12, 2009, the State informed the court that in exchange for Haywood's guilty plea to aggravated robbery as a Range I, standard offender it would enter a nolle prosequi order as to the counts of especially

aggravated kidnapping, attempted second degree murder, and possessing a firearm in the commission of attempted second degree murder. The State then outlined the facts supporting the entry of Haywood's guilty plea to the offense of aggravated robbery:

> Facts giving rise in this indictment are that on April 5th [sic] of 2008, Frederick B[ee] went to a house located at 114 Farrow where there were several others present. And shortly after he arrived [Haywood] and [his co-defendant, Timothy Chatman,] arrived at the place looking for him. Apparently the victim . . . had vandalized a car related to – there . . . was just some bad blood between the two. There was a vandalism issue and there was a drug issue.

> [Haywood and Chatman] came in and went to the back room and grabbed [the victim] and pointed guns at him and took . . . around a hundred dollars from his pocket and then left outside where the victim was shot. And it appears from the evidence in the record that it was [Chatman] who [fired the critical shot].

**Sentencing Hearing.** At the August 17, 2009 sentencing hearing, the State's only proof was the presentence investigation report and the victim impact statement, which were entered into evidence. The presentence report showed that Haywood had a substantial criminal record that began when he was eighteen years of age and included three felony drug convictions, a conviction for felon in possession of a handgun, a violation of probation conviction, and several misdemeanor drug convictions. The trial court acknowledged that it was sentencing Haywood as a Range I, standard offender pursuant to his plea agreement. Six of Haywood's family members were present at the sentencing hearing to show their support.

Haywood, who was thirty-one years old at the time of the sentencing hearing, testified on his own behalf. He apologized to the court for his actions in this case:

> . . . I'm sorry for what I have done. I have tried to turn my life around. I intend to be a productive member of society. I have tried to show my new ways by cooperating with the state and giving a truthful statement about what happened.

> I ask the Court to be lenient with me, [if] possible.

The State informed the court that three of the witnesses against Timothy Chatman failed to appear, which compromised the State's case against Chatman. It added that

-2-

Haywood's cooperation with the State ultimately led to Chatman's guilty plea in this case. The State further said that despite the victim's claim that both Chatman and Haywood shot at him, the ballistics report concluded that only one gun was fired. Finally, the State noted that the victim said Chatman had been more aggressive than Haywood during the incident and that although their had been a dispute between Haywood and the victim, Haywood was "backing off" at the end of the incident.

The defense requested that the court consider an eight-year sentence for Haywood. It reminded the court that the State and the defense had previously agreed to a plea agreement with an eight-year sentence, which the court declined to accept. The defense emphasized that Haywood's prior criminal history did not involve any acts of violence, and it reminded the court that Haywood "intend[ed] to reform" and had been instrumental in bringing Chatman, the actual shooter of the victim, to justice.

The trial court then outlined its considerations regarding sentencing, including Haywood's substantial criminal history:

> Okay. I have considered the entire record, all the information contained in the file.
>
> I'll note for the record that I've got a couple of files here indicating prior convictions of the defendant. Also, the presentence report that's filed has his criminal history.
>
> I listened to the defendant and his allocution, which I am taking into account.
>
> And as I think you know I have to balance all of the positives with negatives and take into account his statement, the statements of the prosecutor about reasons for . . . agreeing to dismiss several charges against Mr. Haywood.
>
> His family's support and support in the community, which does make a difference.
>
> But, there are several enhancing factors that are involved, not the least of which is his criminal history. Just for the record I am considering that.

The court then detailed Haywood's substantial criminal record. At the conclusion of the sentencing hearing, the trial court made its ruling:

[Haywood] has a fairly extensive criminal history. I am also taking into account the information from the victim. It was a pretty egregious crime, regardless of the reason for it. The victim was found by both of the defendants.

Just note for the record that the defendants are kind of pointing at each other, each trying to take less of the blame.

Money was taken from the victim, at gunpoint. But, he was also beaten. He was kicked. I think it indicates that his teeth were kicked out. And he was taken to the hospital in critical condition.

The defendants received quite a benefit, already, with the disposition. Several counts of the indictment were nol[le]-prossed [sic], by motion of the state. I understand it was pursuant to [Haywood's] cooperation.

But, I believe, if I am not mistaken, a firearm charge, count four was dismissed and that was for employing a firearm during the commission of a criminal attempt murder in the second degree.

. . . .

Also, the [especially aggravated kidnapping and attempted second degree murder charges were] nol[le]-prossed [sic] on the motion of the state. But, the firearms offense would have required six years had he been convicted [and this sentence would have been served consecutively to his other sentences].

So, I am going to sentence him . . . as a range I[,] standard offender, [which requires] a range of eight to twelve years.

His previous criminal [convictions] are in addition to those necessary to get him into that range. I am taking into . . . account, the situation of the victim. The fact that a firearm was used during the offense.

At the conclusion of the sentencing hearing, the court imposed a twelve-year sentence in the Tennessee Department of Correction. Haywood subsequently filed a timely notice of appeal.

## ANALYSIS

Haywood argues that he should have received a sentence of eight years rather than twelve years. Specifically, he contends that because the use of a deadly weapon was an element of the aggravated robbery offense to which he pleaded guilty and was contemplated in the aggravated robbery count in the indictment, the court was prohibited from using enhancement factor (9) to enhance his sentence. See T.C.A. § 40-35-114, Sentencing Comm'n Comments (A trial court may apply enhancement factors if the factors themselves are not elements of the charged offense); see also State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987) (Enhancement factor (6),which states that a defendant's sentence may be enhanced if the personal injuries inflicted upon the victim are particularly great, was improperly applied since the victim's death was an element of the vehicular homicide offense.). Haywood additionally argues that the trial court improperly used enhancement factor (1) regarding his prior criminal history to enhance his sentence since his record did not include any crimes of violence. Finally, he contends that the court improperly used enhancement factor (6) regarding personal injuries inflicted on the victim because the proof showed that he was not the individual who shot the victim and because serious bodily injury is an element of the offense of aggravated robbery.

In response, the State argues that the court "properly went behind the plea in finding that had the defendant been convicted of all offenses, he faced a mandatory six-year consecutive sentence for the weapons charge." See T.C.A. § 39-17-1324(e)(1) & (h)(1); see also State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983) ("It is . . . proper for a trial court to look behind the plea bargain and consider the true nature of the offenses committed."). The State further argues that even if the trial court improperly looked behind the plea agreement, Haywood's lengthy criminal record, his prior probation violation, and the substantial injuries suffered by the victim did not make him a good candidate for rehabilitation and more than justified the imposition of the maximum twelve-year sentence.

Because the offenses in this case occurred on April 5, 2008, the 2005 amended sentencing act governs this case. Under the amended sentencing act, "the trial court 'shall consider, but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the defendant's sentence upon the presence or absence of mitigating and enhancement factors." State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008) (quoting T.C.A. § 40-35-210(c) (2006)). Moreover, under the new law "[a]n appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346. The Tennessee Supreme Court explained the impact of the 2005 amended sentencing act:

The amended statute no longer imposes a presumptive sentence. Rather, the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." Id. § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," id. § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," id. § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," id. § 40-35-103(5).

Id. at 343 (internal footnote omitted). The court also emphasized the broad discretion the trial court has in sentencing a defendant under this act:

[A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion. Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened. Thus, even if a trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors. The appellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence.

Id. at 345-46.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In a case where "the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption

-6-

of correctness fails." Carter, 254 S.W.3d at 345 (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992), perm. to appeal denied (Tenn. March 22, 1993)).  Because it appears that the trial court erred in its application of enhancement factor (9), our review is de novo without a presumption of correctness.  See id. at 345-46; Ashby, 823 S.W.2d at 169.

> A trial court, when sentencing a defendant must consider the following:
>
> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2006); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007), perm. to appeal denied (Tenn. Jan. 28, 2008).

Here, Haywood entered an open guilty plea to aggravated robbery.  The trial court acknowledged that it was sentencing Haywood as a Range I, standard offender pursuant to the plea agreement.  The record indicates that the trial court did consider Haywood's allocution as well as his "family's support and support in the community" as mitigating factors in this case.  See T.C.A. § 40-35-113(13) (2006).  Although unclear, the record indicates that the court also applied the following enhancement factors:

> (1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;
>
> . . . .
>
> (6) The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great;
>
> . . . .
>
> (9) The defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense[.]

Id. §§ 40-35-114(1), (6), (9) (2006). At the conclusion of the sentencing hearing, the court stated that it was considering Haywood's criminal history, his physical injuries to the victim, and "[t]he fact that a firearm was used during the offense." See id. §§ 40-35-114(1), (6), (9) (2006). Immediately following the apparent application of these three enhancement factors, the trial court sentenced Haywood to twelve years in the Tennessee Department of Correction.

In order to analyze the applicability of the enhancement factors applied, we must first consider the offense to which Haywood pleaded guilty. Aggravated robbery is defined as a robbery "(1) [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or (2) [w]here the victim suffers serious bodily injury." Id. § 39-13-402(a) (2006). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Id. § 39-13-401(a) (2006). See State v. Daronopolis R. Sweatt, No. M1999-2522-CCA-R3-CD, 2000 WL 1649502, at *8 ("[A] defendant can be convicted of aggravated robbery if the facts show either that the defendant used or displayed a deadly weapon, or that the victim suffered serious bodily injury."). Here, the language of Haywood's indictment regarding the aggravated robbery charge was limited to his use or display of a deadly weapon during the incident:

CHARLES HAYWOOD . . . on April 5, 2008, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully, intentionally or knowingly, take from the person of FREDERICK BEE certain property, to wit: a sum of money, of a value of five hundred dollars ($500) or less, by violence or by putting FREDERICK BEE in fear, said taking accomplished with a deadly weapon or by display of an article used or fashioned to lead FREDERICK BEE to reasonably believe the article to be a deadly weapon, in violation of T.C.A. 39-13-402, against the peace and dignity of the State of Tennessee.

Therefore, we conclude that Haywood's conviction was based on subsection (1) of section 39-13-402, the defendant's use or display of a deadly weapon rather than subsection (2), the infliction of serious bodily injury on the victim.

We initially note that the defendant has the burden of showing the impropriety of the sentence. See T.C.A. § 40-35-401(d) (2006), Sentencing Comm'n Comments. First, Haywood argues that the trial court was prohibited from applying enhancement factor (9)

because the use of a deadly weapon was an element of the aggravated robbery offense to which he pleaded guilty and because the use of a weapon was contemplated in the aggravated robbery count in the indictment. We agree that enhancement factor (9) should not have been applied to enhance Haywood's sentence since the use of a deadly weapon is an element of the aggravated robbery offense. See id. § 40-35-114 (2006) (Where the enhancement factor is "not already an essential element of the offense" and is appropriate for the offense, a trial court may consider the enhancement factor in determining the length of a sentence.); see also State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995) (holding that enhancement factor (9), the possession or use of a deadly weapon, should not be applied to the crime of especially aggravated robbery because it is an element of the offense), perm. to appeal denied (Tenn. May 6, 1996).

Haywood also contends that the court improperly applied enhancement factor (6), bodily injury to the victim, because serious bodily injury is an element of the offense of aggravated robbery. We disagree. We have previously concluded that Haywood's conviction was based on subsection (1) of section 39-13-402, which is the defendant's use or display of a deadly weapon. Accordingly, we conclude that the trial court properly applied enhancement factor (6) because serious bodily injury was not an essential element of the aggravated robbery offense to which Haywood pleaded guilty. Haywood alternatively argues that enhancement factor (6) should not have been applied because the underlying facts supporting his guilty plea showed that he was not the individual that shot the victim. We again disagree. Although the forensic evidence showed that only one gun was shot at the victim, the record is clear that the victim suffered serious physical injuries at the hands of both Haywood and Chatman. In applying enhancement factor (6), the court found that this "was a pretty egregious crime" where "[m]oney was taken from the victim, at gunpoint." It noted that the victim was "beaten[,]" "kicked[,]" the victim's "teeth were kicked out." See id. § 40-35-114(6) (2006). Accordingly, we conclude that the record sufficiently supports application of factor (6) to the aggravated robbery conviction.

Finally, Haywood argues that the trial court improperly applied enhancement factor (1) regarding his prior criminal history because his record did not include any crimes of violence. We disagree that the trial court improperly applied this factor. The language of enhancement factor (1) states that a sentence can be enhanced if the "defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." See T.C.A. § 40-35-114(1) (2006). Clearly, application of this factor is not limited to crimes of violence. During the sentencing hearing, the trial court noted that Haywood had "a fairly extensive criminal history[,]" which consisted of three felony drug convictions, a conviction for felon in possession of a firearm, a violation

of probation conviction, and several misdemeanor drug convictions. See id. § 40-35-114(1) (2006). These convictions warrant the application of enhancement factor (1).

Under the amended sentencing act, as relevant in this case, "the trial court 'shall consider, but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the defendant's sentence upon the presence or absence of mitigating and enhancement factors." Carter, 254 S.W.3d at 344. Although the record indicates that the trial court improperly applied enhancement factor (9), the court's proper application of enhancement factors (1) and (6) was more than sufficient to enhance Haywood's sentence to the maximum sentence in the range.

Upon our de novo review and after holding that enhancement factor (9) was improperly applied, we conclude that the record supports the trial court's imposition of a twelve-year sentence of confinement. Accordingly, Haywood's sentence is proper.

## CONCLUSION

Upon review of the record, we affirm the trial court's judgments.

_____
CAMILLE R. McMULLEN, JUDGE