# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 9, 2008

## STATE OF TENNESSEE v. HERBERT H. FOSTER, JR.

**Direct Appeal from the Circuit Court for Madison County**
**No. 07-241     Donald H. Allen, Judge**

---

**No. W2007-02636-CCA-R3-CD  - Filed February 3, 2009**

---

Defendant-Appellant, Herbert H. Foster, Jr. (hereinafter "Foster"), appeals the sentence imposed by the Madison County Circuit Court as excessive.  He entered open guilty pleas[1] to three counts of aggravated assault, one count of possession of a Schedule IV controlled substance, and one count of possession of drug paraphernalia and was sentenced to an effective term of ten years in the Tennessee Department of Correction as a Range II, multiple offender.[2]  The sole issue for our review is whether the trial court sufficiently weighed the proof offered to mitigate the sentence.  Following our review of the record and the applicable authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, Herbert H. Foster, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; James (Jerry) G. Woodall, District Attorney General; and Shaun A. Brown Assistant District Attorney General, for the appellee, State of Tennessee.


## OPINION

### FACTUAL BACKGROUND

---

[1]A defendant enters an open guilty plea where he or she pleads guilty to a charge but authorizes the trial court to determine the length and manner of the sentence for this charge.

[2] Foster does not challenge the sentences for the possession of Schedule IV controlled substance or possession of drug paraphernalia convictions.

**A. Guilty Plea Hearing.** On September 20, 2007, Foster entered open guilty pleas to all counts of the indictment. At the guilty plea hearing, the State recited the following facts in support of Foster's convictions:

[On] January [12], 2007, [Foster] was in the parking lot at Jackson Madison County General Hospital and the victim in Count 1, Milton Strain, was backing out of a parking space. He was allowing somebody else to pull into that parking space and [Foster] pulled up. Mr. Strain explained to [Foster] that he was waiting for someone else who was coming to take that parking space. Mr. Frank White was in the vehicle also. [Foster] began arguing with them and then [Foster] pulled a knife and brandished a large knife and began waving that at Mr. Strain. Mr. Strain pulled out a baton and a chemical weapon to defend himself. Mr. Strain worked out there at least at the time. [Foster] then fled that area after he placed Mr. Strain in fear of imminent bodily injury by the use of that knife, but he was not hurt. Of course, he notified security.

Mr. Beare, the victim in Count 2, John Beare, who is in security at the hospital came in contact with [Foster] as [Foster] was exiting one of the entrances to the hospital on that same day and night and, of course, Mr. Beare confronted [Foster] and [Foster] then brandished the same knife and [waved] it at Mr. Beare causing him to reasonably fear imminent bodily injury. I believe his uniform was torn from that incident, but there [were] no serious injuries to him, but he feared injury and, of course, he stepped back into the building once [Foster] then began [waving] that knife in order to avoid that situation.

Then Mr. Pollen, Daniel Pollen,[3] who is also with security at the hospital, the victim in Count 3, came in contact with [Foster] outside that door and then was able to subdue [Foster], I believe with a chemical weapon, and [Foster] was also brandishing the knife at Mr. Pollen and [waving] the knife but then dropped that knife once a chemical weapon was used. Security was then able to take him into custody after he placed Mr. Pollen in reasonable fear of imminent death or serious bodily injury.

Once [Foster] was taken into custody, there was a pill bottle that was recovered from his person which contained a crack pipe which was the paraphernalia in Count 5 that he did unlawfully possess. Also, I believe it was six pills -- I'm sorry, Your Honor, nine pills, Your Honor, that turned out to be Propoxyphene [Darvocet] which is a Schedule IV controlled substance as tested positive by the T.B.I. lab to be that substance. All of these offenses occurred in Madison County, Tennessee.

---

[3] The indictment refers to this individual as Daniel Paullin.

**B. Sentencing Hearing.** On October 22, 2007, and November 19, 2007, the trial court conducted sentencing hearings. John Marlon Beare testified that he worked at Jackson General Hospital in the security department and was one of the victims in the case. As a result of the assault, Beare stated that he "reaggravated [his] back and had to have therapy on [his] back and [he] damaged a uniform and cell phone." Although the cost of his therapy was covered by his employer, Beare stated his out of pocket loss was "[j]ust [his] uniform pants [that were] $35 and $112 for [his] cell phone." Beare concluded his testimony and explained, "[W]e were very fortunate in the . . . sense that we had a lot of civilians and people and it could have been a lot worse situation [sic] than it was." He added, "You know, the fact that the perpetrator was blindly flailing his weapon trying to injure anybody he could hit with it . . . needs to be taken into consideration."

Another victim, Daniel Pollen, testified that he was the security supervisor at Jackson General Hospital and was working on the date of the offense. Pollen stated he came into contact with Foster "[a]t the west front main entrance of [the hospital]." As Foster drew his knife and turned toward Pollen, Pollen had already drawn his chemical spray. Foster "attempted to slash the knife at [Pollen], [and Pollen] spray[ed] [Foster]." Foster "then threw the knife in [Pollen's] direction." With the assistance of other deputies, Pollen was able to take Foster into custody. Although Pollen did not suffer any physical injury or property damage, he believed that Foster "showed disregard for human life" and "would be pretty much a menace if he [were] allowed to stay out."

Foster testified that "[w]hen [he] was younger, [he] had a substance abuse problem." He explained that "[he] drank and [he] used marijuana and other drugs." On the date of the offense, he admitted to using "crack cocaine" and to possession of nine Darvocet pills. He explained that he had been unable to sustain employment because of injuries he received from two prior car wrecks. He stated that "[he saw] several counsellors [sic] when [he] was younger" because he had "an abusive alcoholic father." As an adult, he went to "Pathway's" and discovered he suffered from post-traumatic stress disorder, depression, and bipolar disorder. Foster stated, "It helped [him to] understand [him]self and maybe get this under control in the future." On the day of the assaults, Foster was visiting his mother at the hospital because she was suffering from heart problems. After the deputies "sprayed [him] with the chemical spray [Foster] was unable to see and [] was afraid [the deputies] would knock [him] down on top of the knife . . . so [he] threw [the knife] underhanded away from [him] . . . ." He explained that "[the deputies] were close enough to [him and] if [he] had wished to hurt [them], [he] could have done that." As a result of the arrest, Foster stated that he "was unable to sleep on [his] back or sit down or really walk well for about three months." Finally, Foster testified that he would benefit from a special needs placement program.

On cross-examination, Foster stated he drew the knife because he felt threatened, given the number of deputies surrounding him. He admitted to the criminal history as outlined in the pre-sentence report as well as to being on probation when the instant offenses were committed.

Veronica Fortune, Foster's mother, testified that she realized Foster needed mental health counseling at the age of nine or ten years old. She took Foster to the doctor and he was "put on pills every day and one shot a week." She stated that a special needs treatment program would benefit

-3-

Foster because she had "seen him have [bipolar symptoms] two or three times." She was certain that Foster "felt threatened that night because they thought [she] was going to die and when something goes wrong with [her], [Foster's] kind of uncontrollable anyway."

The pre-sentence report was admitted into evidence without objection. After the hearing, the court considered the proof, the pre-sentence report, and arguments of counsel. The court then reviewed Foster's extensive criminal history, which included three prior felony aggravated assaults, possession of a weapon with intent to employ in the commission of a felony, and three misdemeanor convictions for driving under the influence. Foster was also previously convicted of various other misdemeanor offenses including failure to stop and identify, public intoxication, possession of alcohol by a minor, resisting official detention, and two citations for driving on a revoked license. The court noted that Foster was on probation for driving under the influence when he was charged with another driving under the influence offense. The court additionally observed that Foster was on probation for aggravated assault when he committed the instant offenses. Accordingly, the trial court enhanced Foster's sentence because he (1) had an "extensive previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range" and (2) had a "previous history of unwillingness to comply with the conditions of a sentence involving release in the community." See T.C.A. § 40-35-114(1), (8) (2006). In mitigation, the trial court considered that Foster (1) had previously received some "psychiatric help," (2) was addicted to pain medication, (3) had suffered from depression, and (4) had some alcohol and drug problems. However, the trial court afforded the above mitigation proof "slight consideration" because it was "not enough to justify any of [Foster's] actions." The trial court sentenced Foster to ten years as a Range II offender for each of the three aggravated assault convictions. For the remaining offenses of possession of a schedule IV controlled substance and possession of drug paraphernalia, the trial court sentenced Foster to eleven months and twenty-nine days and imposed fines of $750 and $150, respectively. Pursuant to the plea agreement, the trial court ordered the above sentences to be served concurrently.

## ANALYSIS

The only issue Foster presents for our review is whether the sentence imposed by the trial court is excessive. He does not contest the enhancements based on his criminal history and previous probation violations; however, he contends "the mitigation offered at the sentencing hearing should have been afforded greater weight by the trial court." In response, the State cites to State v. Carter and maintains "such a disagreement is not grounds for reversal under the revised Sentencing Act." See State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008). We agree with the State.

**I. Standard of Review.** On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Our review is de novo, without a presumption of correctness, if the

trial court applied inappropriate mitigating or enhancement factors or otherwise failed to follow the principles of the Sentencing Act. Carter, 254 S.W.3d at 345. The defendant, not the State, has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Commission Comments.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See T.C.A. § 40-35-210(b); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007).

In State v. Carter, the Tennessee Supreme Court clarified the changes in Tennessee sentencing law post-Blakely[4] and stated:

> [A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion. Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened. Thus, even if a trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors. The appellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence.

Carter, 254 S.W.3d at 345-46.

Thus, a trial court's "fail[ure] to appropriately adjust" a sentence in light of applicable, but merely advisory, mitigating or enhancement factors, is no longer an appropriate issue for appellate review. Carter, 254 S.W.3d at 345 (citing State v. Banks, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App., at Jackson, July 6, 2007) (noting that "[t]he 2005 amendment [to the Sentencing Act] deleted appellate review of the weighing of the enhancement and

---

[4] Blakely v. Washington, 542 U.S. 296 (2004).

mitigating factors, as it rendered the enhancement and mitigating factors merely advisory, not binding, on the trial courts")).

In this case, the record shows that the sentencing court engaged in an exhaustive review of the proof, Foster's criminal history, arguments of counsel as well as various enhancement and mitigating factors. Additionally, the sentencing court stated the following:

> Also, this pre-sentence investigation report, the Court has reviewed this and will consider this for sentencing purposes along with the Principles of Sentencing. Certainly the Court will consider the nature and characteristics of the criminal conduct involved in this case. . . .
>
> The Court will also consider the evidence and arguments that have been made here today by counsel both as to mitigating and enhancing factors. The defendant has testified here today in his own behalf. I will consider that testimony along with his mother's testimony. Certainly the Court will consider the defendant's amenability to rehabilitation and will also consider all possible alternative sentencing in this matter.
>
> . . . .
>
> As far as mitigating, you know, it does appear from this report that Mr. Foster since the age of ten years has received psychiatric help; apparently has had some problems and suffered some car accidents whereby he received some pretty serious injuries as a result of these accidents. He said that as a result of that, he became addicted to this pain medication, this Darvo[c]et, and also he suffered from depression in the past. You know, I take all of that into consideration to some extent to be mitigating but certainly not enough to justify any of his actions on this particular occasion. It's kind of interesting that he's reported to the probation officer that he has no problem with drugs or alcohol yet he testifies here today that just a few hours before the incidences occurred, he had used crack cocaine and also, of course, had Darvo[c]et in his possession as well. So, you know, it would appear he does have some drug and alcohol problems in this case. Now, I will give that slight consideration for mitigating purposes.
>
> Now, considering all of the facts and circumstances as I've talked about and especially this criminal record and so forth, the Court finds that the appropriate sentence would be something toward the top of the range, which is Range 2, so the Court is going to

sentence him to 10 years as a Range II offender for each of the three different counts. . . .

Foster challenges the weight the trial court afforded to the proof he offered to mitigate his sentence. However, pursuant to Carter, this is no longer an issue for appellate review, and Foster is not entitled to relief. See id. at 345. The record clearly shows that the trial court followed the statutory sentencing procedure, made findings of facts that are adequately supported in the record, and gave due consideration to the principles that are relevant to sentencing. In support of his position, Foster merely claims that his mental problems contributed to the instant offenses and that the testimony regarding his mental health should have been given greater weight by the trial court. However, the sentencing court considered this mitigating testimony and determined it did not "justify any of [Foster's] actions" in the instant case. Foster has not carried his burden of showing that the trial court failed to consider the relevant principles of the sentencing act. Therefore, we cannot conclude that the sentences imposed are excessive or inconsistent with the purposes of our sentencing laws. Accordingly, Foster is not entitled to relief.

**Conclusion**. Based on the foregoing reasons, Foster's sentences are not excessive and the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

-7-