IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 7, 2018

## STATE OF TENNESSEE v. JERMEL BROWN

**Appeal from the Criminal Court for Shelby County**
**No. 14-06405       Chris Craft, Judge**

_____

### No. W2017-01681-CCA-R3-CD

_____

Defendant, Jermel Brown, appeals his Shelby County Criminal Court convictions for aggravated robbery, criminal attempt to commit aggravated robbery, and aggravated assault, for which he received a total effective sentence of twenty-six years' incarceration. Defendant challenges the sufficiency of the evidence to support his convictions, arguing that the State failed to adequately prove his identity as a perpetrator of the offenses. Following a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Stephen Bush, District Public Defender; Michael J. Johnson, Assistant District Public Defender, Memphis, Tennessee, for the appellant, Jermel Brown.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie Cox, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

In December 2014, the Shelby County Grand Jury indicted Defendant and a co-defendant, Earl Davis ("Mr. Davis"), for aggravated robbery, criminal attempt to commit aggravated robbery, and aggravated assault. Defendant and Mr. Davis were tried jointly in April 2017. At trial, Frank Steele testified that, on the evening of January 3, 2014, he

and a friend, Antwan Allen, were at Mr. Allen's sister's residence on Chattering Lane ("the Chattering Lane residence") when Mr. Allen received a telephone call. After the telephone call, Mr. Steele and Mr. Allen went to a residence on Mountain Terrace ("the Mountain Terrace residence") around 10:30 or 11:00 p.m. Mr. Steele recalled that there were five or six adults and several children at the Mountain Terrace residence. Mr. Steele met a man referred to as "J-Rock," whom Mr. Steele identified at trial as Defendant. Mr. Davis was also at the residence. Mr. Steele testified that he and Mr. Allen played cards and shot dice for money with Defendant and Defendant's sister. After thirty or forty minutes, Mr. Allen and Mr. Davis left the residence to pick up Mr. Davis's girlfriend, but Mr. Steele continued playing cards.

Mr. Allen and Mr. Davis returned after about an hour. Eventually, Mr. Steele and Mr. Allen decided to leave the Mountain Terrace residence, and Defendant walked out the front door with them. Mr. Steele testified that, as they were leaving, Mr. Davis climbed out a window and pointed a gun at them. At the same time, Defendant put a gun behind Mr. Steele's head and asked, "[D]o you know what time it is?" Mr. Steele asked what Defendant meant, and Defendant fired a round from his gun into the ground. Mr. Steele then understood that he and Mr. Allen were being robbed. Mr. Allen ran from the scene, and then Mr. Steele heard several more gunshots. Mr. Steele raised his hands and told Defendant to "go ahead and take the money." While Defendant was pointing the gun to Mr. Steele's head, Mr. Steele removed a cell phone, cigarettes, and between $700 and $800 from his pockets and gave the items to Defendant. When Defendant told Mr. Steele he could leave, Mr. Steele ran from the residence. He did not see Mr. Allen but continued to run towards the Chattering Lane residence. After flagging down a police officer, Mr. Steele returned to the Chattering Lane residence with the officer and found Mr. Allen there with a gunshot wound to his hand. Additional officers then responded to the Chattering Lane residence, along with an ambulance for Mr. Allen. Mr. Steele recalled that he viewed a photographic display created by investigators later that morning, and he identified both Defendant and Mr. Davis as the individuals who robbed him and Mr. Allen. Mr. Steele testified that he had never met Defendant and Mr. Davis before the night of the robbery.

On cross-examination, Mr. Steele testified that he drank about ten beers from 5:00 p.m. until 11:00 p.m. on January 3. He stated that he stopped drinking when he arrived at the Mountain Terrace residence and that he was there about six hours before the robbery occurred. He stated that he and Mr. Allen left the residence between 4:30 and 5:00 a.m. on January 4. When asked about the lighting in the area where the robbery occurred, Mr. Steele testified that it was "day enough to see who robbed [him]."

Antwan Allen testified that, on the evening of January 3, 2014, he picked up Mr. Steele, and they went to the Chattering Lane residence. Between 11:00 p.m. and

midnight, he and Mr. Steele went to the Mountain Terrace residence, where they played cards and shot dice with Defendant and Mr. Davis. Mr. Allen explained that the only people he knew at the Mountain Terrace residence were Mr. Davis and Defendant's sister. He stated that he had gone to school with Mr. Davis. Mr. Allen recalled that, at one point that night, he and Mr. Davis went to an apartment complex to pick up Mr. Davis's girlfriend. They then returned to the Mountain Terrace residence. Mr. Allen stated that he and Mr. Steele decided to leave the Mountain Terrace residence around 4:00 a.m. Mr. Allen recalled that Defendant followed him and Mr. Steele outside and began talking with Mr. Steele. As they were talking, Defendant pointed a gun at Mr. Steele and said, "You know what this is, man." Defendant then ordered Mr. Steele to "[g]ive [him] everything." At the same time, Mr. Davis came out of the side of the house and pointed a gun at Mr. Allen. Mr. Davis stated, "Y'all know what this is. Drop everything off." Mr. Allen realized that he was being robbed. Mr. Davis ordered him not to move, but then a "[g]unshot went off." Mr. Allen stated that he was unsure if Defendant or Mr. Davis fired the shot, but he ran from the scene. Mr. Allen then heard several additional gunshots. As Mr. Allen ran, he jumped several fences before he realized that he had been shot in the hand. He stopped at another home on Mountain Terrace and knocked on the door. Because the resident of the home would not open the door, he ran back to the Chattering Lane residence, which was about five minutes away. Mr. Allen recalled that police officers arrived moments later, and he was transported to the hospital where he was treated for the gunshot wound to his hand. The State introduced medical records from the hospital and photographs of Mr. Allen's injury, and he testified that he still had scars on his hand from the wound. Later, officers came to Mr. Allen's residence with photographic displays and asked if he could identity the perpetrators of the robbery. He identified both Defendant and Mr. Davis and stated that Mr. Davis was the individual who shot him.

On cross-examination, Mr. Allen agreed that he drank two beers before going to the Mountain Terrace residence to play cards and that, while playing cards and shooting dice, he drank liquor, but he stated that he could not recall how many drinks he had that night. Mr. Allen explained that he and Mr. Steele left the Mountain Terrace residence around 3:00 a.m. to pick up more beer and to meet Mr. Allen's cousin in Tipton County, but they returned to the Mountain Terrace residence around 3:50 a.m. About twenty-five minutes later, Mr. Allen and Mr. Steele decided to leave. Mr. Allen agreed that he had one more beer after returning to play cards. Mr. Allen denied that he was "drunk" and stated that he was able to drive that night.

Officer David Hallum of the Memphis Police Department testified that he responded to a shooting call on January 4, 2014, at a neighboring residence on Mountain Terrace. When he arrived, the homeowner told him that "someone ran up to the door, beating on the door saying they were shot, and then they ran off." Officer Hallum then

learned that two other police officers had been flagged down, and they were requesting that an ambulance respond to the Chattering Lane residence. Officer Hallum went to the Chattering Lane residence and spoke to Mr. Steele and Mr. Allen, who provided Officer Hallum with a description of both suspects. Officer Hallum then went to the Mountain Terrace residence but did not see anyone there matching the suspects' descriptions. However, in the front yard of the Mountain Terrace residence, Officer Hallum saw a package of cigarettes and a spent shell casing. He then called for a crime scene investigator to collect evidence.

Sergeant Jason Parish of the Memphis Police Department testified that he worked as a crime scene investigator in January 2014. On the morning of January 4, he responded to the Mountain Terrace residence. After photographing the scene, he collected the shell casing and cigarette package found in the front yard. He also collected a second shell casing by the front porch. Sergeant Parish testified that the spent shell casings were from different guns; the shell casing by the front porch was a .380 caliber, and the shell casing beside the cigarette package was a .25 caliber.

Mr. Earl Davis testified that he was at the Mountain Terrace residence on the evening of January 3, 2014, with his brother Chris Davis and his brother's girlfriend. Mr. Davis stated that Defendant, Defendant's sister, and another man named Ted were also there that night. He stated that Defendant and Defendant's sister played cards with Mr. Steele and Mr. Allen. Mr. Davis stated that he was there when Mr. Allen and Mr. Steele arrived, but he denied that he went anywhere with Mr. Allen later that evening. Mr. Davis claimed that he left the gathering around 10:30 p.m. when his girlfriend picked him up and took him home. He denied ever returning to the Mountain Terrace residence and denied participating in the robbery of Mr. Allen and Mr. Steele. He agreed that he previously went to school with Mr. Allen but stated that they were not really friends.

Following deliberations, the jury found Defendant guilty as charged.[1] For these offenses, the trial court sentenced Defendant, as a Range II multiple offender, to eighteen years for aggravated robbery; eight years for criminal attempt to commit aggravated robbery; and eight years for aggravated assault. The trial court ordered Defendant's eight-year sentences to run concurrently with one another but consecutively to Defendant's eighteen-year sentence, for a total effective sentence of twenty-six years' incarceration.

Thereafter, Defendant filed a timely motion for new trial, which was denied by the trial court after a hearing. This timely appeal follows.

---

[1] Mr. Davis was convicted of aggravated robbery, attempted aggravated robbery, and attempted aggravated assault.

## II. Analysis

On appeal, Defendant contends that the evidence is insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt of aggravated robbery, attempted aggravated robbery, and aggravated assault. Defendant argues that the victims were not able to "properly perceive events" and identify him as the perpetrator because they were both "severely impaired" based on the amount of alcohol they consumed that night and because it was "very dark" in the area where the offenses occurred. The State responds that the evidence is sufficient to support Defendant's convictions. We agree with the State.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

The identity of the perpetrator is an essential element of any crime and may be proven by circumstantial evidence alone. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002) and *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). The weight to be given to circumstantial evidence, the inferences to be drawn from such evidence, and "the extent to which the circumstances are consistent with guilt and inconsistent with innocence" are questions for the jury. *Id.* (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)).

As relevant here, aggravated robbery is robbery that was "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-402(a)(1)

(2014). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2014). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a) (2014).

As instructed by the trial court, for the jury to convict Defendant of criminal attempt to commit aggravated robbery, the State must have proven beyond a reasonable doubt the existence of the following essential elements:

> One, that the defendant intended to commit the specific offense of aggravated robbery; and two, that the defendant did some act intending to complete a course of action or cause a result that would constitute aggravated robbery under the circumstances as the defendant believed them to be at the time and his actions constituted a substantial step toward the commission of aggravated robbery.

*See* Tenn. Code Ann. § 39-12-101(a)(3) (2014); 7 Tenn. Prac. Pattern Jury Instr. T.P.I.—Crim. 4.01.

As it pertains to Defendant's case, "[a] person commits aggravated assault who[] [i]ntentionally or knowingly commits an assault as defined in § 39-13-101, and the assault . . . [i]nvolved the use or display of a deadly weapon[.]" Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii) (2014). A person commits assault by "[i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another[.]" Tenn. Code Ann. § 39-13-101(a)(1) (2014).

"A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401(a) (2014). As pertinent here, a person is criminally responsible for the conduct of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Tenn. Code Ann. § 39-11-402(2) (2014). Criminal responsibility is not a separate crime but instead a theory by which the State may prove the defendant's guilt based upon another person's conduct. *State v. Osborne*, 251 S.W.3d 1, 16 (Tenn. Crim. App. 2007) (citing *State v. Mickens*, 123 S.W.3d 355, 389-90 (Tenn. Crim. App. 2003)).

*Aggravated Robbery*

When viewed in the light most favorable to the State, the evidence is sufficient for any rational trier of fact to find Defendant guilty of aggravated robbery of Frank Steele beyond a reasonable doubt, as charged in Count 1 of the indictment. Mr. Steele testified that, as he was leaving the Mountain Terrace residence, Defendant followed him out the front door. Defendant pulled out a gun and pointed it at Mr. Steele's head. When Mr. Steele did not understand that Defendant was robbing him, Defendant fired a round from his gun into the ground. Mr. Steele then put his hands up and told Defendant to take his money. While Defendant was pointing the gun to Mr. Steele's head, Mr. Steele removed a cell phone, cigarettes, and between $700 and $800 from his pockets and gave the items to Defendant.

Both Mr. Steele and Mr. Allen identified Defendant at trial and in photographic displays following the robbery. Defendant asserts that the victims' testimony must be called into question because it was dark outside, and they had been drinking. However, Mr. Steele testified that it was not so dark that he could not identify Defendant as the perpetrator, and he further stated that he stopped drinking when he arrived at the Mountain Terrace residence around 10:30 or 11:00 p.m., several hours before the robbery occurred. It was within the province of the jury to consider these factors when assigning weight and credibility to the victims' testimony. *Bland*, 958 S.W.2d at 659. Defendant's argument regarding the testimony of Mr. Steele and Mr. Allen is nothing more than a request for this court to reweigh their testimony, which this court declines to do. The victims' testimony provided sufficient evidence for a reasonable juror to conclude that Defendant was the individual who robbed Mr. Steele. Defendant is not entitled to relief.

*Criminal Attempt to Commit Aggravated Robbery and Aggravated Assault*

Likewise, the State presented evidence from which a rational trier of fact could find that Mr. Davis committed attempted aggravated robbery and aggravated assault of Mr. Allen and that Defendant was criminally responsible for Mr. Davis's conduct. Mr. Allen testified that, while Defendant was pointing his gun at Mr. Steele, Mr. Davis pointed a gun at him and said, "Y'all know what this is. Drop everything off." Mr. Allen realized that he was being robbed. Mr. Davis ordered him not to move, but then a "[g]unshot went off." Mr. Allen stated that he was unsure if Defendant or Mr. Davis fired the first shot, and he ran from the scene. From this testimony, the jury could conclude that Mr. Davis intended to take property from Mr. Allen when he brandished a gun and demanded that Mr. Allen "[d]rop everything off." As Mr. Allen's flight was all that prevented the robbery from being completed, Mr. Davis's actions constitute a substantial step towards the completion of aggravated robbery. Thus, the jury had

sufficient evidence to conclude that Mr. Davis attempted to commit an aggravated robbery of Mr. Allen.

Mr. Allen also testified that he heard several additional gunshots as he fled the scene. After jumping several fences, he realized that he had been shot in the hand. Mr. Allen was later transported to the hospital by ambulance. The State introduced Mr. Allen's hospital medical records into evidence, and Mr. Allen testified that scars remained on his hand from the gunshot wound. When viewing a photographic display, Mr. Allen identified Mr. Davis as the individual who shot him. From this testimony the jury could reasonably conclude that Mr. Davis either intentionally, knowingly, or recklessly fired his gun, a deadly weapon, thereby causing bodily injury to Mr. Allen.

The evidence also establishes that Defendant was criminally responsible for Mr. Davis's actions. Mr. Steele testified that, while he was talking to Defendant, he noticed Mr. Davis climb out of a window. Defendant pointed his gun at Mr. Steele and ordered Mr. Steele to "[g]ive [him] everything[,]" while Mr. Davis pointed his gun at Mr. Allen. Mr. Davis stated, "Y'all know what this is. Drop everything off." From this testimony, the jury could reasonably conclude that Defendant and Mr. Davis were working together to rob the victims. Thus, the evidence was sufficient for the jury to convict Defendant of criminal attempt to commit aggravated robbery and aggravated assault of Mr. Allen under the theory of criminal responsibility. Defendant is not entitled to relief.

### III. Conclusion

For the aforementioned reasons, the judgments of the criminal court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE